**Donald BENTLEY, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–453.**

Court of Appeals of Alaska.

Oct. 11, 1985.

---

Steve Cole, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellant.

W.H. Hawley, Asst. Atty. Gen., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

Donald Bentley was convicted of perjury, AS 11.56.200, and sentenced to a term of eight years imprisonment. He appeals his conviction and sentence. We find that Bentley was denied the constitutional right to be confronted with witnesses against him, and reverse his conviction.

On April 21, 1983 Donald Bentley was indicted for assault in the second degree in Kodiak. Bentley was apparently jailed. On June 3, 1983, Magistrate McBride ordered Bentley released setting various conditions of release. Pursuant to one such condition, Bentley was to observe a 9:00 p.m. to 6:00 a.m. curfew. Another condition stated that Bentley was not to, during the period of release, consume or possess any intoxicating beverage or enter or remain on premises where alcohol was being sold or consumed.

On August 20, while Bentley was still on release, he attended a rodeo in Kodiak. He was arrested there at about 10:00 p.m. or shortly thereafter for violating the conditions of his release. The arresting officer believed not only that Bentley was in violation of the curfew restriction, but also that he was under the influence of intoxicating liquor.

On August 22, 1983, a telephone bail review hearing was held, with Superior Court Judge J. Justin Ripley presiding in Anchorage. Bentley, defense attorney Joel Bolger, District Attorney Dwayne McConnell, Kodiak Police Officer Lou Ketchum, and court personnel were present in the courtroom in Kodiak. Ketchum, who attended the rodeo while off duty, testified that he observed Bentley behaving as though highly intoxicated, holding an open and frothing beer bottle, and smelling of alcohol.

Bentley testified at the hearing. He did not contest that he was in violation of his curfew, though he offered the explanation that the friend with whom he had arranged a ride home prior to 9:00 p.m. failed to show up. He explained his unsteady behavior by testifying to lameness in his legs, feet, and hands caused by injury and illness. He denied drinking beer or any other type of intoxicating liquor while at the rodeo. He also denied being intoxicated at the rodeo.

Judge Ripley found the officer's testimony more credible than Bentley's. He found that the state had proven Bentley's intoxication by clear and convincing evidence. Accordingly, Bentley's bail was increased.

Three days later, on August 25, 1983, Bentley was indicted for two counts of perjury. Count I charged that Bentley lied when he testified he was not drinking any type of intoxicating liquor at the rodeo. Count II charged that he lied when he testified he was not intoxicated at the rodeo.

On November 29, 1983, Bentley was tried by a jury on the perjury charges. Bentley testified that he was under the influence of a large quantity of marijuana at the rodeo, but that he had no alcohol to drink, and that he was not intoxicated from alcohol. The jury found him not guilty on count I of the indictment, and guilty on count II.

Officer Ketchum, the prosecution's sole witness at the bail review hearing, did not appear for the perjury trial. Over defense objection a tape recording of Officer Ketchum's bail review hearing testimony was played to the jury at trial. The testimony was admitted to evidence pursuant to Alaska Rule of Evidence 804, which provides in part:

Rule 804 Hearsay Exceptions—Declarant Unavailable.

(a) *Definition of Unavailability.* Unavailability as a witness includes situations in which the declarant

(1) is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of his statement; or

(2) persists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so; or

(3) establishes a lack of memory of the subject matter of his statement; or

(4) is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity; or

(5) *is absent from the hearing and the proponent of his statement has been unable to procure his attendance ... by reasonable means including process.*

A declarant is not unavailable as a witness if his exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of his statement for the purpose of preventing the witness from attending or testifying.

(b) *Hearsay Exceptions.* The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(1) *Former Testimony.* Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of another proceeding, *if the party against whom the testimony is now offered ... had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.*

804 (emphasis added).

The underscored portions of the rule highlight the two issues addressed by Bentley on appeal. First, he argues that Ketchum was not "unavailable" as defined by the rule, that is, that the state did not show that it was unable to procure Ketchum's attendance by reasonable means. Second, he argues that his counsel at the bail review hearing did not have a "similar motive" to cross-examine Ketchum before the reviewing judge as did his trial counsel before the jury.

 Whether Ketchum was unavailable is an issue of constitutional dimension. The sixth amendment of the United States Constitution and Article I, section 11 of the Alaska Constitution guarantee the accused in all criminal prosecutions the right to be confronted with the witnesses against him. The admissibility of hearsay evidence is limited by this requirement. Hence,

> The confrontation clauses of the state and federal constitutions have been interpreted to permit the prosecution to use prior testimony of witnesses who cannot be located only if the state has exercised due diligence in trying to find them. *Fresneda v. State,* 483 P.2d 1011 (Alaska 1971); *Barber v. Page,* 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968).

*Green v. State,* 579 P.2d 14, 16 (Alaska 1978). The Rule 804 "reasonable means" requirement is to be applied in light of the constitutional requirement of "due diligence." *See id.; cf. Stores v. State,* 625 P.2d 820, 825–27 (Alaska 1980) (same approach in applying Alaska Rule of Criminal Procedure 15(d) and (e), allowing use of a deposition at trial where the witness is unavailable). In *Stores,* the policies underlying this confrontation clause requirement were set forth, first by quoting the United States Supreme Court:

> [t]he primary object of the [Confrontation Clause] ... was to prevent depositions or ex parte affidavits ... being used against the prisoner in lieu of personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look upon him, and judge by his demeanor on the stand and the

manner in which he gives his testimony whether he is worthy of belief.

*Stores v. State*, 625 P.2d at 823, *quoting Mattox v. United States*, 156 U.S. 237, 242–43, 15 S.Ct. 337, 339, 39 L.Ed. 409, 411 (1895). The Alaska Supreme Court continued, "We think that one of the purposes which the Confrontation Clause serves is to relieve prosecutors of the temptation to use pre-recorded testimony instead of live witnesses." *Stores v. State*, 625 P.2d at 823 (footnote omitted).

In *Fresneda v. State*, 483 P.2d 1011, 1017 (Alaska 1971), *quoting People v. Redston*, 293 P.2d 880, 886 (Cal.1956) the following definition of due diligence was utilized:

> The word "diligence" connotes perservering application, untiring efforts in good earnest. There must be evidence of a substantial character to support the conclusion of due diligence. [What is required is] a thorough, painstaking and systematic attempt to locate the witnesses.

*See also Green v. State*, 579 P.2d at 18 (utilizing the *Redston* definition); *Stores v. State*, 625 P.2d at 826 n. 18 (same).

Prior to trial, Judge Madsen heard testimony concerning the unavailability of Officer Ketchum. Sheila Vincent, paralegal for the district attorney in Kodiak, testified that Ketchum was served on October 6 with a subpoena compelling his appearance on November 28. He was served in Homer, when the ferry he was travelling on docked. She used no other means to locate Ketchum or to advise him to show up for trial. Kodiak police officer Floyd Steele testified that while Ketchum was living in Kodiak, he worked as a police officer, and Steele was his superior. Steele testified Ketchum gave two weeks notice that he was quitting, and left the island quickly after stopping work. Steele testified Ket-

chum was heavily in debt, and that the police department was being contacted daily by creditors. Steele testified he tried to locate Ketchum by contacting the business through which Ketchum bought his Kodiak home, with no success. He spoke with a local woman who had been picking up Ketchum's mail, but she claimed to have no forwarding address. She had received a letter addressed to Ketchum care of Eagle River. Steele contacted troopers "and asked them to sweep the Palmer, Wasilla, Eagle River area," but this turned up nothing right away. Two days prior to trial, Steele testified a citizen told him that he would be able to locate Ketchum through the school system. The Kodiak elementary school that Ketchum's children had attended informed Steele the day before the trial that the children were now attending the Eagle River Elementary School. No further action had been taken. Steele felt that he might be able to "get ahold" of Ketchum by the next morning.

■■ Witnesses may be deemed unavailable when they cannot be found despite dilligent efforts, or when they are located but beyond the means available to obtain their attendance.[1] Here, the local authorities believed they knew where Ketchum was, and they believed they might be able to contact him within the jurisdiction in short order. On this record it appears possible that the prosecution would have been able to procure Ketchum's attendance before the close of evidence. Even if a continuance was necessary, we believe such delay would have been warranted to protect the right of the accused to be confronted by a witness against him.

■■ The state did not show that Officer Ketchum was unavailable to testify as that term must be interpreted in light of the constitutional right of confrontation.[2]

---

1. Absence from the jurisdiction alone does not satisfy this requirement. *See Barber v. Page*, 390 U.S. 719, 723, 88 S.Ct. 1318, 1321, 20 L.Ed.2d 255, 259 (1968).

2. The state argues that we should remand this case to allow it to show that Officer Ketchum was unavailable. However the trial court held a

full hearing to decide the question of whether Officer Ketchum was unavailable and the state has not suggested what new information it would present if we allowed a remand. We conclude we should decide the issue of whether Ketchum was unavailable based on the record which we have. The burden of proof on this

It was error to admit his prior recorded testimony into evidence at the perjury trial.

■■■■ The state urges that this error was harmless, if error at all.[3] We disagree. Ketchum's testimony was perhaps the strongest evidence presented that Bentley's intoxication was due to alcohol. Further, the jury knew it was Ketchum's testimony which the state relied on to show Bentley's intoxication at the bail hearing, and Bentley's testimony, for which he was convicted of perjury, was given in response to Officer Ketchum's testimony. Unlike the other witnesses, Ketchum's testimony was given within two days of the rodeo, while the incident was still fresh in his mind. No review of the record can reveal the extent to which the jury was moved by this witness rather than others. We cannot conclude with any degree of certainty that the erroneous admission of this testimony was harmless.[4]

The conviction is REVERSED.

point was on the prosecution as the proponent of the recorded evidence. *Ohio v. Roberts,* 448 U.S. 56, 74–75, 100 S.Ct. 2531, 2543, 65 L.Ed.2d 597, 613 (1980).

3. The parties disagree as to whether the stringent constitutional harmless error standard should apply in this case, rather than the somewhat less stringent standard which applies in cases involving errors which are not of constitutional dimension. *See, e.g., Poulin v. Zartman,* 542 P.2d 251, 261 (Alaska 1975); *Love v. State,* 457 P.2d 622, 629–30 (Alaska 1969). For constitutional error to be held harmless, the court must find that it was harmless "beyond a reasonable doubt." *See Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710–11 (1967); *Williamson v. State,* 692 P.2d 965, 970–71 (Alaska App.1984). Here we have found the error violated Bentley's constitutional confrontation right, so that the constitutional standard ought to apply.

4. Because we are reversing Bentley's conviction we find it unnecessary to resolve the other issues he raises on appeal. We comment briefly on one point he raises, however, in order to assist to trial court in the event that Bentley is

tried again. Bentley argues his tape recorded bail review hearing testimony should not have been played at his perjury trial. It appears to us that the trial court did not err in deciding to allow the state to replay the defendant's prior testimony at trial. One portion of the recorded prior proceedings, though, strikes us as being particularly prejudicial, while adding very little of relevance to a determination of whether Bentley perjured himself. The prosecutor asked Bentley the following question on cross-examination at the bail review hearing:

Q. Okay. So if Officer—you heard Officer Ketchum testify. If Trooper Richard McCulvick (ph) testified and said the same thing, if Trooper Rodney Quinn (ph) testified and said you were drinking, if Trooper Bukovick (ph) testified and said you were drinking, if Trooper Jack Cripe (ph) testified and said you were drinking, and if Officer Neil Cooper of the Bethel police department testified, all saying that you were intoxicated, that you'd been drinking out there, they would all be incorrect? Is that correct?

In fact, only Ketchum testified for state at the bail review hearing. Even if other portions of Bentley's prior testimony may properly be admitted, we feel this segment is inadmissible.