Gary SLUKA, Appellant,

v.

STATE of Alaska, Appellee.

Ella WATTS, Appellant,

v.

STATE of Alaska, Appellee.

Nos. A–763, A–834.

Court of Appeals of Alaska.

April 11, 1986.

---

**3.** On this date, the attorney general's office first appeared and moved to strike. *See supra* note 1 & accompanying text.

Larry C. Zervos, Fairbanks, for appellant Gary Sluka.

Lawrence C. Kenworthy, Law Office of John Rosie, Fairbanks, for appellant Ella Watts.

John A. Scukanec, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Harold M. Brown, Atty. Gen., Juneau, for appellee.

Before BRYNER, Chief Judge, COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

This is a consolidated appeal by Ella Watts and Gary Sluka involving charges which arose out of an alleged incident of child abuse involving Watts' three-year-old daughter, A.W., occurring on December 31, 1983. Watts was convicted, after a jury trial, of criminal non-support, AS 11.51.120. Sluka was convicted, after a jury trial, of assault in the second degree, AS 11.41.-210(a).

Watts, Sluka, and A.W. all lived together in Fairbanks. On New Year's Eve 1983, about 6:00 p.m., Watts took A.W. to the home of Maria Wiess, who had agreed to babysit A.W. over night. Watts brought aspirin and explained that Sluka had accidentally kicked A.W., injuring the left side of her face. Watts told Wiess that she had a nurse examine A.W., and that the nurse said A.W. was alright. After Watts had left, Wiess became concerned about the extent of the bruising and swelling on A.W.'s face. Wiess' daughter, Eliana, and her daughter's friend, Rockson Shippey, looked at A.W. Shippey called Social Services because he believed that A.W. had been "badly abused."

A representative from Social Services, Ernie Collins, arrived at the Wiess home and assumed emergency custody of A.W. He took A.W. to the hospital emergency room. A Fairbanks police detective took photographs of A.W.'s face not long after her admission into the hospital. The photo-

graphs showed extensive bruising to the left side of A.W.'s face, that both of A.W.'s eyes were black, that A.W.'s entire forehead was discolored and swollen, and that A.W. had a large bruise and scrape behind her left ear.

The emergency room physician telephoned Dr. Alan MacFarland, a pediatrics specialist. Dr. MacFarland did not go to the hospital but ordered A.W. admitted to pediatrics for observation of her neurological functioning. The following day, January 1, 1984, Dr. MacFarland examined A.W. At that time he took additional photographs of A.W.'s face, and also took photographs of bruises appearing elsewhere on A.W.'s body.

A.W. was questioned numerous times about how she received her injuries. Testimony about A.W.'s out-of-court statements was received at both the grand jury proceeding and at trial. Wiess, her daughter Eliana, Shippey, the social worker Collins, the police detective,[1] and Dr. MacFarland all testified to A.W.'s statements about how the kicking occurred. In addition, they testified about A.W.'s actions where A.W. purportedly demonstrated how the kicking occurred. The witnesses' testimony tended to establish that the kicking was not accidental.

In contrast, Sluka and Watts both testified at trial that Sluka had actually kicked A.W., but that it was an accident. They testified that they were wrestling on the floor when A.W. walked into the room and was accidentally kicked. According to their testimony, A.W. had only one small red mark and some slight swelling on her face when they dropped her off at Wiess' home.

The jury convicted both Watts and Sluka and they now appeal, raising numerous issues. We find the issues involving the admission of A.W.'s out-of-court statements under exceptions to the hearsay rule and Sluka's right to confrontation disposi-

---

1. The police detective testified at only the grand      jury, not at trial.

tive. We will discuss these issues separately.

## EXCITED UTTERANCE

A.W., the alleged victim in this case, was three years and eight months old at the time of the incident giving rise to these charges. She never testified at the trial. There was never any determination that A.W. was incompetent to testify, and there is nothing in the record to indicate why A.W. was not called as a witness. Instead, the state presented several other witnesses who testified as to what A.W. told them. Maria Wiess testified that A.W. stated that her daddy kicked her with his foot and that it was an accident. Apparently A.W. called Sluka "Daddy." Eliana Wiess testified that A.W. said she was a bad girl because she was crying and her daddy kicked her. Eliana Wiess then demonstrated how A.W. made three kicking motions with her foot. Rockson Shippey testified that A.W. told him that she and her daddy were playing "and then he started kicking me." According to Shippey, A.W. then demonstrated by kicking him hard on the leg a couple of times. The state argued that these statements were admissible as excited utterances under Alaska Rule of Evidence 803. Sluka entered a continuing objection to the admission of these statements.

Alaska Rule of Evidence 803(2) provides an exception to the hearsay rule for excited utterances. The exception allows admission of "[a] statement relating to a startling event or condition made *while the declarant was under the stress of excitement* caused by the event or condition." *See* A.R.E. 803(2) (emphasis added). The question of whether a statement falls under the excited utterance exception is committed to the sound discretion of the trial court. *Lipscomb v. State*, 700 P.2d 1298, 1306 (Alaska App.1985). The determination will be reversed on appeal only if clearly erroneous. *State v. Agoney*, 608 P.2d 762, 764 n. 5 (Alaska 1980); *Lipscomb*, 700 P.2d at 1306.

In *Lipscomb*, we cautioned against admitting statements as excited utterances where they might be properly characterized as the product of reflective thought. *Lipscomb*, 700 P.2d at 1307. The supreme court has also expressed concern where statements admitted as excited utterances might have been the product of reflection. *See Agoney*, 608 P.2d at 764 (where answers given during interrogation ninety minutes after crime, sixty minutes of which declarant was alone in the patrol car, statements should not have been admitted under Rule 803(2)). *Cf. United States v. Golden*, 671 F.2d 369 (10th Cir.), *cert. denied*, 456 U.S. 919, 102 S.Ct. 1777, 72 L.Ed.2d 179 (1982) (where declarant described act after driving twelve miles at 120 miles per hour, statement was held properly admitted as excited utterance).

The Alaska Evidence Rules Commentary provides:

> the standard of measurement is the duration of the state of excitement. "How long can excitement prevail? Obviously there are no pat answers and the character of the transaction or event will largely determine the significance of the time factor."

Evidence Rules Commentary at 230 (citations omitted).

In *United States v. Iron Shell*, 633 F.2d 77 (8th Cir.1980), *cert. denied*, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981), the trial court allowed police testimony about statements made by a nine-year-old girl concerning an attempted sexual assault occurring between forty-five and seventy-five minutes earlier. The statements were held properly admitted; the court stated that neither the lapse of time nor the fact that the statement was made in response to an inquiry was dispositive:

> Rather, these are factors which the trial court must weigh in determining whether the offered testimony is within the 803(2) exception. Other factors to consider include the age of the declarant, the physical and mental condition of the declarant, the characteristics of the event and the subject matter of the statements. In order to find that 803(2) applies, it must appear that the declarant's condi-

tion at the time was such that the statement was spontaneous, excited or impulsive rather than the product of reflection and deliberation.

633 F.2d at 86 (citations omitted).

■ It appears to us that a relatively long period of time elapsed between the incident that supposedly gave rise to the excited condition and A.W.'s out-of-court statement. Gary Sluka testified that the kicking incident occurred about 2:00–2:30 p.m. and that he and Watts took A.W. to the babysitter's between 5:00–5:30 p.m. The babysitter's daughter, Eliana Wiess, testified that she began asking A.W. what happened somewhere between 6:00 and 7:00 p.m. Rockson Shippey testified that he arrived and began talking to A.W. between 7:00 and 8:00 p.m. Therefore, it appears that a period of approximately four hours lapsed between the incident and A.W.'s out-of-court statements. *Cf. Torres v. State*, 519 P.2d 788, 793 (Alaska 1974) (out-of-court statement found spontaneous because only five to ten minutes elapsed between incident and statement); *Alston v. United States*, 462 A.2d 1122, 1128 (D.C. App.1983) ("several peaceful hours" between offense and statement, under the totality of the circumstances, prevented a finding of spontaneity and sincerity). From the testimony it does not appear that A.W. was "under the stress of excitement caused by the event or condition." *See* A.R.E. 803(2).

Additionally, A.W. made her out-of-court statements in response to questioning. Eliana Wiess described A.W.'s behavior as "[j]ust fine.... She was happy ... although quiet." Ms. Wiess also testified that A.W. was not even interested in talking, that A.W. was just playing with her toys. Rockson Shippey testified that A.W. was "very aloof" but that she was not crying or screaming.

Although, as stated before, neither lapse of time nor A.W.'s appearance are dispositive, the evidence does not show that A.W. was "emotionally engulfed" by the situation, either inferentially from the time and circumstances, or actually from the statements of the witnesses. *See Deloso v. State*, 37 Md.App. 101, 376 A.2d 873, 877 (1977). Nothing in the witnesses' testimony indicates that A.W.'s normal powers of reflection and conscious deliberation were suspended. *See Agoney*, 608 P.2d at 764. We therefore conclude that the trial court erred in admitting the testimony concerning A.W.'s out-of-court statements.[2]

### A.W.'S STATEMENTS TO DR. MacFARLAND

According to Dr. MacFarland, A.W. told him that her head injuries were caused by her father who hit her with a shoe. According to MacFarland, A.W. also stated that both her parents had hit her with their hands, and that her father had hit her with a belt.

Sluka concedes that much of what A.W. told Dr. MacFarland was admissible under Evidence Rule 803(4); however, he contends that A.W.'s statements identifying Sluka as A.W.'s assailant were inadmissible. The state, on the other hand, contends that the identifying statements were reasonably pertinent to diagnosis and treatment, and therefore were admissible.

Rule 803(4) provides:

*Statements for Purposes of Medical Diagnosis or Treatment.* Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent

---

**2.** In reaching this decision we are particularly influenced by the fact that A.W. did not testify at trial and no showing was made as to her unavailability. *See* U.S. Const. amend. VI; Alaska Const. art 1 § 11; *Lipscomb v. State,* 700 P.2d 1298, 1308 n. 10 (Alaska App.1985). In urging us to reach a different conclusion, the state cites

*United States v. Iron Shell, supra.* However, we note that in the *Iron Shell* case there was some testimony that the victim's eyes were still red from crying and that her hair was messed up from the assault. In addition, we note that in *Iron Shell* the victim testified at the trial. *See Iron Shell,* 633 F.2d at 85.

to diagnosis or treatment [are admissible.]

The commentary to Rule 803(4) notes:

Even those few jurisdictions which have shied away from generally admitting statements of present condition have allowed them if made to a physician for purposes of diagnosis and treatment in view of the patient's strong motivation to be truthful. The same guarantee of trustworthiness extends to statements of past conditions and medical history, made for purposes of diagnosis or treatment. It also extends to statements as to causation, reasonably pertinent to the same purposes, in accord with the current trend, *Shell Oil Co. v. Industrial Commission*, [2 Ill.2d 590], 119 N.E.2d 224 (Ill.1954); New Jersey Evidence Rule 63(12)(c). *Statements as to fault would not ordinarily qualify under this latter language.* Thus, a patient's statement that he was struck by an automobile would qualify but not his statement that the car was driven through a red light. [Emphasis added.]

Rules of Evidence Commentary, at 232.

■ Rule 803(4) admits three types of statements: (1) medical history, (2) past or present sensations, and (3) inception or general cause of the disease or injury. All three types are admissible where they are "reasonably pertinent to diagnosis or treatment." *Iron Shell*, 633 F.2d at 83. However, statements concerning the identity of the assailant are seldom, if ever, sufficiently related to diagnosis or treatment to make them admissible. *Id.* at 84; *see also United States v. Nick*, 604 F.2d 1199, 1202 (8th Cir.1979). The *Iron Shell* court recognized the dual rationale of Rule 803(4): Statements made to facilitate medical diagnosis and treatment are likely to be truthful and reliable because declarants are unlikely to fabricate where their own health and wellbeing is at stake; and a fact reliable enough to serve as a basis for diagnosis and treatment is also reliable enough to escape hearsay proscription. Accordingly, the court adopted a two-part test flowing from the rationale:

[F]irst is the declarant's motive consistent with the purpose of the rule; and second, is it reasonable for the physician to rely on the information in diagnosis and treatment.

*Iron Shell*, 633 F.2d at 84.

■ We agree with Sluka that the statements in which A.W. identified him as the assailant were inadmissible under 803(4).[3]

---

**3.** The state cites *Goldade v. State*, 674 P.2d 721 (Wyo.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 3539, 82 L.Ed.2d 844 (1984) in urging us to reach a different result. In *Goldade*, the court relied on Wyoming Rule of Evidence 803(4) which is similar to the Alaska Rule of Evidence 803(4). The court also noted a state statute which required any person who had reasonable cause to suspect child abuse to report such abuse to a child protection or law enforcement agency. *Id.* at 725. This statute is similar to AS 47.17.020 which requires "practitioners of the healing arts" to report suspected child abuse to the Department of Health and Social Services. In *Goldade*, the court recognized the general rule that "statements attributing fault are not admissible under rules identical to Rule 803(4)." *Id.* at 725. However, the *Goldade* court fashioned a special rule for child abuse cases based on state policy. In *Goldade*, there was a strong dissent questioning the policy of interpreting the evidence rules in a different manner in a child abuse case. However, we do not have to directly decide whether to adopt the *Goldade* reasoning in this case. We note that *Goldade* involved a court trial in which the trial judge determined that the alleged victim was incompetent to testify. *Id.* at 723. In that case it was clear that the victim was unavailable. We are heavily influenced in the instant case by the fact that A.W.'s statements were admitted and there was no showing as to her unavailability.

In addition, we note the recent decision of the Eighth Circuit in *United States v. Renville*, 779 F.2d 430 (8th Cir.1985). The court in *Renville* dicussed the language in *Iron Shell* that a declarant's statements relating to the identity of the individual responsible for the injuries would seldom be pertinent to treatment or diagnosis. *Renville*, 779 F.2d at 436 (citing *Iron Shell*, 663 F.2d at 84). The *Renville* court recognized that, due to the necessity of treating the psychological component of child abuse, statements to a physician during an examination that the abuser is a member of the victim's immediate household *are* reasonably pertinent to treatment because the physician must be attentive to the emotional and psychological injuries which accompany the crime of child abuse. *Renville*, 779 F.2d at 436–37 (emphasis in original). However, the court went on to state that in order to meet the two-part test set forth in *Iron Shell*, the declarant's response must be made in response to an inquiry where the identification is important to

## CONFRONTATION CLAUSE

Sluka contends that his right of confrontation was denied when the court allowed the testimony of the various witnesses as to the out-of-court statements of A.W., identifying Sluka as A.W.'s assailant.[4] The state contends that although it did not show that A.W. was unavailable at the time of trial, her statements were sufficiently reliable to satisfy the confrontation clause.[5]

In arguing that the admission of A.W.'s statements did not violate the confrontation clause, the state relies on *United States v. Nick*, 604 F.2d 1199 (9th Cir.1979). In *Nick*, the trial court admitted a child's out-of-court statements that identified the defendant as the child's assailant and which indicated that the defendant had sexually assaulted the child. The court held that admission of the statements did *not* violate the confrontation clause because the child's statement had significant guarantees of trustworthiness. *Id.* at 1204. In making this finding the court relied on the following factors: (1) the child's statement was directly responsive to questioning about his upset condition; (2) the statement was made while the child was still experiencing pain from the assault; (3) the statement's childish terminology had the ring of verity and was entirely appropriate to a child of tender years; (4) physical evidence corroborated the child's statement; (5) the statement was material and more probative as

to the assailant's identity than any other evidence, except the defendant's confession; (6) the contemporaneous statement was more probative than testimony the child would have given months later at trial; and (7) the interests of justice were served by admitting the child's declaration because the child was too young to appreciate the implications of the sexual assault. *Id.* Additionally, the court found the statement trustworthy because the defendant had the opportunity to commit the crime, the child knew the defendant so he was not likely to mistake his identity, and the child's mother, who reported the child's statement, was unlikely to have a faulty recollection of the child's seven-word statement. *Id.*

However, there are differences between *Nick* and the present case. In *Nick*, the court held the child's out-of-court declarations were admissible under Evidence Rules 803(4) and 803(2). *Id.* at 1202. Other decisions have recognized that a finding of admissibility under an accepted exception to the hearsay rule establishes reliability. *See Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597, 608 (1980).

■ It does not appear to us that the statements which A.W. allegedly made were of sufficient reliability to meet the confrontation clause objection. Certainly the fact that she was kicked by Sluka,

---

diagnosis and treatment, and the victim manifests an understanding of the importance to medical diagnosis and treatment. *Id.* at 438. The court held that the *Iron Shell* test had been met under the facts of the case and admission was not an abuse of discretion.

*Renville* is distinguishable from the present case in two important aspects. Initially, nothing in the present record reflects that A.W. knew or understood that her statements identifying Sluka were important to her treatment. *See Renville*, 779 F.2d at 438. Secondly, in *Renville* the victim testified at trial and was subject to cross-examination. *Id.* at 440. We again emphasize that the failure to show A.W. was unavailable is a major influence in our decision.

**4.** The objection which Sluka made to the admission of A.W.'s statements appears to us to have

been broad enough to invoke the confrontation clause. In objecting, Sluka stated that A.W. was available to the state and yet the state was refusing to have her testify and was instead trying to bring in her testimony through "these hearsay exceptions which don't fit." Therefore, we find this case to be distinguishable from *Drumbarger v. State*, 716 P.2d 6, 14 n. 3 (Alaska App., 1986), where we held that the defendant had not preserved a confrontation clause objection. Drumbarger objected in the trial court to the child witness's statements only on hearsay grounds, but did not contend that the witness was available. In fact, Drumbarger impliedly conceded the witness's unavailability by arguing that the witness was incompetent to testify at the grand jury proceedings.

**5.** The right of confrontation is guaranteed a defendant by the U.S. Const. amend. VI and Alaska Const. art. 1 § 11.

either accidentally or otherwise, is undisputed. However, as we have discussed earlier in this opinion, the demonstration that A.W. made concerning the kicking, and statements which A.W. made which suggested a pattern of child abuse, do not appear to fall within recognized hearsay exceptions. Furthermore, given A.W.'s age and the fact that her statements were responses to questions, there is a risk that she would be subject to suggestion. Thus, unlike *Nick*, we do not find that A.W.'s statements carried sufficient guarantees of trustworthiness to permit their admissibility without a showing of unavailability.

■ Finally, in *Nick*, the court appears to have assumed the victim was unavailable to testify because of his young age. *Id.* at 1202. There is nothing in the present record to indicate that A.W. was incompetent to testify as a witness or was otherwise unavailable. We decline to assume A.W. was unavailable because of her youth. A showing of unavailability is key to a finding that a defendant's confrontation rights have not been violated. *See Lipscomb v. State*, 700 P.2d 1298, 1308 n. 10 (Alaska App.1985). *See California v. Green*, 399 U.S. 149, 158, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489, 497 (1970) (stating: "there is good reason to conclude that the Confrontation Clause is not violated by admitting a declarant's out-of-court statements, *as long as the declarant is testifying as a witness and subject to full and effective cross-examination*" (emphasis added)). *But see United States v. Inadi*, —— U.S. ——, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986) (holding that language in *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) that unavailability is always a requirement can not be read too broadly so as to apply to all possible hearsay exceptions; court found unavailability was not a requirement in the admission of co-conspirator's statements). We conclude that because A.W.'s statements did not contain sufficient guarantees of trustworthiness as guaranteed by the United States and Alaska Constitutions and because A.W. was not shown to be unavailable, Sluka was denied his right of confrontation.

## HARMLESS ERROR

Lastly, the state contends that the admission of the hearsay statements, if error, was harmless. Since the error in this case involved Sluka's constitutional right to confrontation, we would have to find the error "harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710–11 (1967); *Bentley v. State*, 706 P.2d 1193 (Alaska App.1985); *Williamson v. State*, 692 P.2d 965, 970–71 (Alaska App.1984).

■ We believe that A.W.'s statements, including the demonstrations of repeated kicking and the statements that both parents had hit her with their hands and that Sluka had hit her with a belt, could have had a powerful impact on the jury in reaching its verdict that Sluka had abused A.W. We accordingly refuse to find that the error was harmless beyond a reasonable doubt, and we conclude that Sluka's conviction must be reversed. We affirm Watt's conviction.[6]

---

**6.** Only Sluka raised the hearsay and confrontation points on appeal. Watts and Sluka raise the following issues:

(1) Admission of photographs showing A.W.'s injuries: A.W.'s complete physical condition on December 31, 1983 was clearly relevant, and admission of the photographs did not violate A.R.E. 404(b). We conclude that the trial court did not abuse its discretion in finding that the probative value of the photographs outweighed the danger of unfair prejudice. A.R.E. 403.

(2) Failure to obtain a second medical examination: We conclude that the defendants did not take adequate steps to obtain a second physical examination of A.W. We also fail to see how the results of a second physical examination would have been particularly probative. We find no error.

In addition to these points, Sluka raises these additional issues:

(3) Grand jury: We conclude that the testimony concerning A.W.'s statements was inadmissible hearsay and was admitted in violation of Alaska R. Crim.P. 6(r). However, the other evidence which the state presented, excluding the hearsay evidence, was clearly sufficient to support the indictment. *See Frink v. State*, 597 P.2d 154, 163 (Alaska 1979). We

REVERSED in part and AFFIRMED in part.

SINGLETON, Judge, concur.

SINGLETON, Judge, concurring.

I concur in the court's decision affirming the conviction of Ella Watts and reversing the conviction of Gary Sluka. With regard to Sluka, I am satisfied that his case presents a situation in which the confrontation clause of the state and federal constitutions[1] requires a showing that A.W. was unavailable, as a prerequisite to the admissibility of her out-of-court statements.[2] I am also satisfied that Sluka's objections sufficiently focused the trial court's attention on the issue of unavailability to preserve that issue for consideration in this court. Since the state made no effort to show that A.W. was unavailable, we must reverse. It is unnecessary, in my view, to discuss the hearsay exceptions which would be relevant if A.W. were properly found unavailable.

conclude the court did not err in refusing to quash the indictment.

    (4) Motion for judgment of acquittal: We conclude the trial court did not err in refusing to grant Sluka's motion for judgment of acquittal. *See Deal v. State,* 657 P.2d 404, 405 (Alaska App.1983).

Because of our reversal, we find it unnecessary to reach the other issues which Sluka raises.

1. U.S. Const. amend. VI; Alaska Const. art. 1, § 11.

2. *Ohio v. Roberts,* 448 U.S. 56, 65, 100 S.Ct. 2531, 2538, 65 L.Ed.2d 597, 607 (1980). *Cf. Stores v. State,* 625 P.2d 820, 822–24 (Alaska 1980) (discussing confrontation clause but deciding case on alternate ground).