**STATE of Alaska, Appellant,**

v.

**James H. NOLLNER, Appellee.**

**No. A–1937.**

Court of Appeals of Alaska.

Feb. 11, 1988.

---

Robert D. Bacon, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Grace Berg Schaible, Atty. Gen., for appellant.

Marcia Holland, Asst. Public Defender, Fairbanks, and Dana Fabe, Public Defender, Anchorage, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

James H. Nollner was indicted for two counts of sexual abuse of a minor in the first degree. AS 11.41.434. Nollner filed a motion to dismiss the indictment. Judge Jay Hodges granted the motion. The state has appealed to this court. We reverse.

The following facts were presented to the grand jury: L.A., a three-year-old girl, lived in Galena with her mother, W.A., and her father, James Nollner. In the spring of 1986, L.A.'s mother began to notice a redness around L.A.'s vaginal area. L.A. had started to wet her pants again, even though she had been toilet trained previously. L.A. also told her mother that her "butt" hurt. In May or June of 1986, W.A. brought L.A. to the local medical clinic. Sonya Vent, a physician's assistant, examined L.A. She discovered signs of infection in L.A.'s urine, but nothing conclusive.

In early July, W.A. brought L.A. back to the clinic. W.A. was concerned because L.A. continued to wet her pants. Vent re-examined L.A., who had a swollen hymen and tested positive for a certain bacteria indicative of haemophilus vaginitis, a venereal infection. This bacteria is common in women, but not in children.

On July 28, 1986, L.A. returned to the clinic, and this time was examined by Nancy Schupp, a nurse practitioner. A scar was discovered between L.A.'s vagina and anus. Furthermore, L.A.'s anal muscles were relaxed during the examination in a way which suggested that she was used to having something in her anus. A social worker tried to talk to L.A. at this time, but L.A. was not able to say much. W.A. and Nollner separated in October of 1986, for reasons unconnected with the present case.

W.A. brought L.A. back to the clinic on October 10, 1986, because of a cold. Schupp noticed that L.A.'s vaginal opening was very red. It had enlarged significantly since July. The opening was larger than normal for a three-year-old. Schupp and W.A. asked L.A. who was bothering her. L.A. had not previously made any statements concerning sexual abuse. At first, L.A. would not say who was bothering her. Eventually, however, she whispered into her mother's ear that it was her dad. W.A. testified that she had to "pry [the information] out of her." When asked if anybody else bothered her, L.A. said no. Finally, Schupp suggested confirming L.A.'s responses through pictures. Apparently,

L.A. was shown pictures of Nollner, Nollner's father, W.A.'s father, and other males who lived in Galena. Schupp was not present when the photos were shown to L.A., but she reported that L.A. "basically focused on her dad...."

On October 15, 1986, Dr. Marvin Bergeson, a pediatrician, examined L.A. in Fairbanks. Dr. Bergeson found symptoms of sexual abuse. In Dr. Bergeson's presence, L.A. again whispered to her mother that her father had "hurt her butt."

Nancy Schupp testified that Nollner asked her to test him for haemophilus vaginitis. Schupp found signs of this infection in Nollner. Schupp testified, however, that this infection is common in Galena.

The state attempted to call L.A. as a witness at the grand jury hearing held on November 19, 1986. L.A. had difficulty testifying. She just shook her head in response to most questions. When the prosecutor asked L.A. to identify a stuffed puppy dog toy as either a dog or a fish, L.A. called it a fish.

The prosecutor told the grand jury that L.A. was not competent to testify. He stated that L.A. was incompetent because she could not communicate effectively and could not show the grand jury that she knew the difference between truth and falsehood. The prosecutor advised the grand jurors, however, that they still could consider W.A.'s testimony concerning L.A.'s identification of Nollner as a hearsay exception because it was a "first complaint." Likewise, he told them to consider Dr. Bergeson's testimony about L.A.'s identification of Nollner as a hearsay exception as a statement given for the purpose of medical diagnosis and treatment. The grand jury returned a true bill on both counts of the indictment.

In granting Nollner's motion to dismiss the indictment, Judge Hodges appears to have ruled that, although some of L.A.'s statements identifying Nollner might be admissible as hearsay exceptions, under *Sluka v. State*, 717 P.2d 394 (Alaska App. 1986), these statements were insufficiently reliable to identify Nollner as the person who assaulted L.A.

In *Sluka*, we reversed a conviction for assault in the second degree on a three-year-old girl because the conviction was based upon the hearsay statements of the girl. In reaching this decision we emphasized that there was no showing that the three-year-old girl was incompetent to testify as a witness or was otherwise unavailable. *Id.* at 401. In the instant case, the prosecution attempted to have L.A. testify before the grand jury; however, she apparently was unable to do so, and the prosecutor concluded that L.A. was not competent to testify.

The state argues that L.A.'s statements should be admissible under various exceptions to the hearsay rule. The state argues that L.A.'s statements on October 10, 1986, should be admissible (1) as a "first complaint" of sexual abuse, *Greenway v. State*, 626 P.2d 1060 (Alaska 1980); (2) as statements made for medical diagnosis and treatment, A.R.E. 803(4); and (3) under the residual exception to the hearsay rule. A.R.E. 803(23); A.R.E. 804(b)(5). The state contends that if any of L.A.'s statements identifying Nollner are admissible as a hearsay exception, then the indictment is sufficient.

This case presents a difficult problem which we first encountered in *Sluka*. Where a victim of child abuse has difficulty testifying, the victim's statements made soon after the alleged offense may have significant probative value. On the other hand, there is a grave danger where a defendant is charged with an offense based on a hearsay statement of a young child who does not testify.

We believe that *Sluka* is distinguishable from the present case on two grounds. First, there was no showing that the alleged victim in *Sluka* was not able to testify. In the instant case, L.A. was unable to answer questions before the grand jury, and the prosecutor determined that L.A. was incompetent to testify. Nollner has not challenged this determination. Second, *Sluka* involved a trial proceeding rather than a grand jury indictment. Our decision in *Sluka* turned to a large degree

on whether conviction of Sluka through the hearsay statements of the alleged victim violated his right to confrontation. 717 P.2d at 400–01. A defendant does not, however, have the right to confront the state's witnesses at the grand jury.

Criminal Rule 6(r) provides:

*Admissibility of Evidence.* Evidence which would be legally admissible at trial shall be admissible before the grand jury. In appropriate cases, however, witnesses may be presented to summarize admissible evidence if the admissible evidence will be available at trial. Hearsay evidence shall not be presented to the grand jury absent compelling justification for its introduction. If the hearsay evidence is presented to the grand jury, the reasons for its use shall be stated on the record.

There is significant authority for the state's position that L.A.'s statements were properly admitted as an exception to the hearsay rule, as statements made for purposes of medical diagnosis or treatment.[1] In *Sluka,* we observed that "statements concerning the identity of the assailant are seldom, if ever, sufficiently related to diag-

nosis or treatment to make them admissible."[2] 717 P.2d at 399. We also noted, however, that several courts had allowed admission of statements concerning the identity of an assailant in a child abuse case. This body of authority appears to be growing.[3]

We believe that the authority in favor of admitting statements such as L.A.'s into evidence is sufficiently strong so that the prosecution could reasonably have presented this evidence in good faith believing that the evidence would be admissible at trial. Furthermore, even if L.A.'s testimony identifying Nollner did not fall within the medical diagnosis exception to the hearsay rule, it appears to us that the state has an excellent argument that L.A.'s inability to testify before the grand jury constituted "compelling justification" for presenting hearsay evidence under Criminal Rule 6(r). *See Galauska v. State,* 527 P.2d 459, 463–66 (Alaska 1974) (the fact that codefendant would probably exercise his right not to testify before the grand jury held to be a compelling justification for admission of codefendant's confession which implicated defendant.) We therefore conclude that the

---

1. Alaska Rule of Evidence 803(4) provides an exception to the hearsay rule for:

   *Statements for Purposes of Medical Diagnosis or Treatment.* Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

2. In making this statement we relied on *United States v. Iron Shell,* 633 F.2d 77, 84 (8th Cir. 1980), *cert. denied,* 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981).

3. *See United States v. Renville,* 779 F.2d 430, 436–38 (8th Cir.1985) (statements of child abuse victim that abuser is member of immediate household presents sufficiently different situation from that envisioned by drafters of rule 803(4) to become reasonably pertinent to treatment; the alleged victim, however, testified at trial and was subject to cross-examination); *State v. Gregory,* 78 N.C.App. 565, 338 S.E.2d 110, 112–13 (1985) (three-and-one-half-year-old's statements to examining physician identifying her father as the perpetrator of child abuse admitted under Rule 803(4); child did not testify); *People v. Wilkins,* 134 Mich.App. 39, 349

N.W.2d 815, 817–18 (1984) (statements of nine-year-old to physician identifying source of victim's sexual abuse was necessary for treatment and therefore admissible under Rule 803(4); victim testified at trial). *See also Goldade v. State,* 674 P.2d 721 (Wyo.1983), *cert. denied,* 467 U.S. 1253, 104 S.Ct. 3539, 87 L.Ed.2d 844 (1984) (four-year-old's statements to a physician identifying perpetrator of child abuse admitted under medical diagnosis exception; trial judge had found that the alleged victim was incompetent to testify; strong dissent, however, questioned the policy of interpreting the evidence rules differently in a child abuse case); *State v. Robinson,* 153 Ariz. 191, 735 P.2d 801, 810–13 (1987) (statements of victim of child abuse identifying perpetrator admissible under Rule 803(4); victim was found to be unavailable to testify because of an existing mental infirmity). *But cf., State v. Bellotti,* 383 N.W.2d 308, 312 (Minn.App. 1986) (admission of statement of victim of child abuse concerning identity of alleged perpetrator inadmissible under medical diagnosis exception); *State v. Reidhead,* 705 P.2d 1365 (Ariz. 1985) (statement by child with broken arm to physician that "daddy twisted my arm" was reversible error, where statement as to fault was not reasonably pertinent to diagnosis or treatment and was only evidence connecting father with injury).

prosecution could properly present to the grand jury L.A.'s statements identifying Nollner which she made during her medical treatment.

■ We conclude that L.A.'s statements identifying Nollner, made during her medical treatment, presented sufficient evidence for the grand jury to indict. We therefore do not need to decide whether the state's other theories for admission of these statements have merit. *Giacomazzi v. State*, 633 P.2d 218 (Alaska 1981) (the use of inadmissible hearsay evidence before a grand jury will not vitiate the indictment if other evidence was presented which justified the indictment).

■ In reaching the decision that the state presented sufficient evidence to charge Nollner, we are placing heavy emphasis on the fact that this evidence was presented in the context of a grand jury, not a trial. We have serious concerns about basing a conviction on evidence of identity such as was presented in this grand jury proceeding. We do not believe, however, that the ultimate admissibility at trial of this evidence is best examined in a grand jury proceeding. Rather, we believe that this evidence is best examined in a trial court proceeding where the prosecutor, the defendant and the defendant's attorney, and the trial judge can directly participate.[4]

The trial court's decision dismissing this indictment is accordingly REVERSED.

---

[4] We are not deciding that L.A.'s statements identifying Nollner would be admissible at trial as statements made for medical diagnosis or treatment. A.R.E. 803(4). We can anticipate numerous objections to admission of these statements under A.R.E. 803(4) and the confrontation clauses of the United States and Alaska constitutions. There is also a serious issue as to the sufficiency of L.A.'s statements to support a conviction. It does not seem realistic, however, to require the prosecution to anticipate all possible objections to this testimony in the context of an *ex parte* proceeding such as grand jury. These issues are best dealt with in an adversarial hearing in the trial court.