*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| STATE OF ALASKA, | ) | |
| | ) | Supreme Court No. S-18076 |
| Petitioner, | ) | Court of Appeals No. A-13326 |
| | ) | |
| v. | ) | Superior Court No. 3AN-17-07280 CR |
| | ) | |
| The Estate of HARRY POWELL, | ) | O P I N I O N |
| | ) | |
| Respondent. | ) | No. 7740 – January 24, 2025 |
| | ) | |

Petition for Hearing from the Court of Appeals of the State of Alaska, on appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Catherine M. Easter, Judge.

Appearances: Hazel C. Blum and Diane L. Wendlandt, Assistant Attorneys General, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for Petitioner. Claire De Witte, Assistant Public Defender, and Samantha Cherot, Public Defender, Anchorage, for Respondent.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

HENDERSON, Justice.
PATE, Justice, with whom CARNEY, Justice, joins, dissenting.

## I.    INTRODUCTION

At issue in this matter is whether certain recorded out-of-court statements of child victims of crime, contemplated by Alaska Rule of Evidence 801(d)(3), may be

admitted as evidence at grand jury proceedings. The respondent argues that such recorded out-of-court statements are inadmissible hearsay and may not be admitted at a grand jury proceeding because it typically is not possible to meet all of Evidence Rule 801(d)(3)'s foundational requirements at that stage of the case. The State disagrees, contending that the rule governing admissibility of evidence before the grand jury, Alaska Rule of Criminal Procedure 6(s), specifically anticipates that any evidence that would be admissible at trial may be admitted during grand jury proceedings. The State argues that so long as it would be able to meet the foundational requirements of Evidence Rule 801(d)(3) at trial, Criminal Rule 6(s) allows for admission of the recorded out-of-court statements at issue before the grand jury. In light of the plain text and structure of Criminal Rule 6(s), as well as the legislature's purpose in promulgating Evidence Rule 801(d)(3), we agree with the State and conclude that so long as the State would be able to meet the requirements of Evidence Rule 801(d)(3) at the time of trial, the recorded out-of-court statements of minor crime victims addressed by that rule may be admitted before the grand jury. We reverse the court of appeals' decision otherwise.

## II.    FACTS AND PROCEEDINGS

### A.    The Indictment And Motion To Dismiss

In 2018 a grand jury indicted Harry Powell, now deceased, on one count of second-degree sexual abuse of a minor[1] and one count of second-degree misconduct involving a controlled substance,[2] both involving fourteen-year-old A.S.[3] Powell was also indicted on one count of second-degree sexual abuse of a minor involving fifteen-year-old A.O.

---

[1]    AS 11.41.436(a)(1).

[2]    Former AS 11.71.030(a)(2) (2018).

[3]    We use initials to protect the privacy of the victims.

During the grand jury proceeding, the State presented video recordings of interviews with A.S. and A.O. that had been conducted at a child advocacy center.[4] The detectives who had conducted the interviews testified before the grand jury and described the process and setting, including techniques used and safeguards taken to limit influence on the children's descriptions of relevant events. One detective described how child forensic interviewing training focuses on "asking open ended questions [and] avoiding [questions] that[] . . . elicit a yes or no or true or false kind of answer." The other detective described the room where the interviews took place, and both detectives confirmed the victims' identities. The State played the video recording of A.O.'s interview, in which she did not disclose sexual abuse by Powell. The State then played the video recording of A.S.'s interview, in which A.S. described sexual abuse by, and drug use with, Powell. The prosecutor then instructed the grand jurors that if they felt that they "need[ed] to hear directly" from A.S. and A.O., "or that it would be helpful in reaching a decision to have either of the girls come in and testify in front of [the jury]," the prosecutor would "make it happen." The State did not call A.S. or A.O. as witnesses. The State then called a third-party eyewitness who was able to describe the sexual abuse of A.O. by Powell.

Powell subsequently moved to dismiss the indictment, arguing that the video recordings presented by the State constituted inadmissible hearsay.[5] In particular Powell argued that the recordings did not meet the requirements necessary to constitute

---

[4] A "child advocacy center" is a child-focused facility "that includes representatives from law enforcement, child protection, criminal prosecution, victim advocacy, and the medical and mental health fields who collaborate and assist in investigating allegations of sexual or other abuse and neglect of children." AS 47.17.033(l).

[5] "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Alaska R. Evid. 801(c).

non-hearsay under Evidence Rule 801(d)(3) or to amount to a hearsay exception under Criminal Rule 6(s).[6] Related to Evidence Rule 801(d)(3), Powell contended that the videos could not meet three of the Rule's requirements at the grand jury stage: 1) that the victim must be available for cross-examination under subsection (d)(3)(B); 2) that the trial judge must have reviewed the "entirety of the circumstances surrounding the victim interview" under subsection (d)(3)(F); and 3) that the trial judge must have determined that "the interests of justice are best served" by admitting the recording under subsection (d)(3)(H).[7] Without the recorded interviews, Powell argued there was insufficient evidence to support the grand jury's indictment and that it must be dismissed.

The superior court granted Powell's motion to dismiss the counts of the indictment involving A.S. The court agreed with Powell "that the foundation required

---

[6]    Effective December 2022, Supreme Court Order 1993 added a subsection to Criminal Rule 6. Alaska Supreme Court Order No. 1993 (Nov. 29, 2022). This change resulted in a re-lettering of the proceeding subsections, so Criminal Rule 6(r) was renamed 6(s) during the pendency of this litigation. *Id.* The amendment did not change the substance of former Rule 6(r); we refer to it as 6(s) in this opinion to minimize future confusion. *See id.* We also note that during the pendency of this litigation the legislature passed, and the Governor signed into law, a bill amending Rule 6(s). *See* Ch. 11, §§ 1, 61, SLA 2024. We decide this appeal based on the text of Rule 6(s) as it existed in 2018 because the recent law was not in effect during the grand jury proceeding here. *See id.* §§ 66(f), 69 (stating that amended rule "applies to indictments occurring on or after" effective date of January 1, 2025). We do not address the effect that the recent change in the rule may have on grand jury proceedings.

[7]    *See* Alaska R. Evid. 801(d)(3)(B), (F), (H); *Augustine v. State*, 355 P.3d 573, 582-83 (Alaska App. 2015) ("[T]wo of the criteria—(d)(3)(F) and (d)(3)(H)—explicitly require the trial judge to exercise judgment after evaluating the entirety of the circumstances surrounding the victim's statement."). The indictment at issue here is the superseding indictment, and therefore Powell had the opportunity to view the video recording before the second grand jury proceeding. Powell did not challenge the admission of the evidence under Rule 801(d)(3)(G), which requires that defense counsel be provided an opportunity to view the video before admission. Alaska R. Evid. 801(d)(3)(G).

by Rule 801(d)(3)(B) was not established" at the time of the grand jury proceedings. It held that because cross-examination is not possible at the grand jury phase of the case, and the rule "contemplates a cross-examination contemporaneous to the introduction of the recording," the foundational elements for admission of the video recorded statements could not be met at grand jury. It did not reach Powell's arguments with respect to subsections (F) and (H) because it found that the subsection (B) requirement had not been met. Without the video recordings it concluded that there was insufficient evidence to sustain the indictment against Powell as to charges involving A.S. Regarding charges related to A.O., it held that the eyewitness testimony presented to the grand jury about A.O. was sufficient to sustain the indictment.

## B. Court Of Appeals Proceedings And Appeal

The State appealed the dismissal of the indictment. While the appeal was pending, Powell contracted COVID-19 and died in pretrial detention. The parties agreed that although the matter was moot, it should nonetheless proceed and be decided under the public interest exception to the mootness doctrine. The court of appeals agreed.[8]

The court of appeals affirmed the superior court's dismissal of the two counts of the indictment involving A.S.[9] The court reasoned that because the foundational requirements of Evidence Rule 801(d)(3) cannot be met at the grand jury stage and the legislative history did not indicate that the legislature considered whether these statements would be admissible before the grand jury, video-recorded statements cannot be admitted as non-hearsay under Evidence Rule 801(d)(3) at grand jury proceedings.[10] The court also considered a decision by the Nevada Supreme Court,

---

[8] *State v. Powell*, 487 P.3d 609, 610 n.1 (Alaska App. 2021) (citing *Hayes v. Charney*, 693 P.2d 831, 834 (Alaska 1985)).

[9] *Id.* at 616.

[10] *Id.* at 614-15.

*Rugamas v. Eighth Judicial District Court*,[11] in which that court held that a similar hearsay exception did not apply at grand jury proceedings in Nevada.[12]

The State petitioned for our hearing of the court of appeals' decision, and we granted the petition in early 2022. Given that Evidence Rule 801(d)(3) was originally promulgated by the legislature, and to account for the possibility that there could be legislative action on the issue during the 2022 legislative term, we stayed our review of the case until the end of the legislative session. The legislature ultimately took no action on this issue during the 2022 term.[13] The parties therefore proceeded with briefing, and we heard argument in June 2023. The legislature subsequently amended Criminal Rule 6(s) in 2024; however, our decision in this case addresses the rule as it existed at the time of Powell's indictment in 2018.[14]

## III. STANDARD OF REVIEW

We review questions of law, including the interpretation of court rules, de novo.[15] We apply our "independent judgment, adopting the 'most persuasive rule of law in light of precedent, reason, and policy.' "[16]

---

**11** 305 P.3d 887 (Nev. 2013).

**12** *Powell*, 487 P.3d at 615-16 (citing *Rugamas*, 305 P.3d at 890-95).

**13** The legislature considered a somewhat related, but distinct, bill during the 2022 legislative term, but that bill did not advance out of committee at the time. Senate Bill (S.B.) 188, 32d Leg., 2d Sess. (2022). As discussed above, the legislature amended Rule 6(s) in 2024, but this amendment was not in effect during the grand jury proceedings in this case and we do not address any impact of the amendment on future grand jury proceedings. *See* discussion *supra* note 6.

**14** *See supra*, notes 6 and 13.

**15** *Cora G. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 461 P.3d 1265, 1276 (Alaska 2020).

**16** *Lingley v. Alaska Airlines, Inc.*, 373 P.3d 506, 512 (Alaska 2016) (quoting *Donahue v. Ledgends, Inc.*, 331 P.3d 342, 346 (Alaska 2014)).

## IV.  DISCUSSION

### A.  Under Criminal Rule 6(s)(1), Prosecutors May Present Evidence To The Grand Jury That Would Later Be Admissible At Trial.

The admissibility of evidence before the grand jury[17] is governed by Alaska Criminal Rule 6(s).  Under Criminal Rule 6(s)(1), evidence "which would be legally admissible at trial shall be admissible before the grand jury."  The rule generally excludes the presentation of non-admissible hearsay to the grand jury, "absent compelling justification" or in the event it meets one of three limited exceptions.[18]

Alaska Evidence Rule 801(d)(3) establishes when a recorded statement by a child victim of crime is not hearsay and is admissible at trial.  Such a recorded statement must meet eight foundational requirements in order to be deemed admissible non-hearsay.[19]  These include the court's consideration and decision that the recording

---

[17]    The grand jury determines whether to indict a defendant on felony charges.  Alaska Const. art. I, § 8.  The grand jury functions both as "an investigatory and accusatory body," and to protect "the innocent against oppression and unjust prosecution."  *Cameron v. State*, 171 P.3d 1154, 1156 (Alaska 2007) (first citing *United States v. Calandra*, 414 U.S. 338, 343–44 (1974); and then quoting *Frink v. State*, 597 P.2d 154, 165 (Alaska 1979)).

[18]    Alaska R. Crim. P. 6(s)(1).

[19]    Alaska R. Evid. 801(d)(3)(A)-(H) ("(A) [T]he recording was made before the proceeding; (B) the victim is available for cross-examination; (C) the prosecutor and any attorney representing the defendant were not present when the statement was taken; (D) the recording is on videotape or other format that records both the visual and aural components of the statement; (E) each person who participated in the taking of the statement is identified on the recording; (F) the taking of the statement as a whole was conducted in a manner that would avoid undue influence of the victim; (G) the defense has been provided a reasonable opportunity to view the recording before the proceeding; and (H) the court has had an opportunity to view the recording and determine that it is sufficiently reliable and trustworthy and that the interests of justice are best served by admitting the recording into evidence.").

"is sufficiently reliable and trustworthy and that the interests of justice are best served by admitting the recording into evidence."[20]

Powell advocates, and the court of appeals held, that the recordings were inadmissible because (1) Evidence Rule 801(d)(3) requires findings and often a hearing before the involved video-recorded statements can be admitted at trial, and (2) there is no indication that the legislature intended that these video recordings would be admitted at the grand jury stage.[21] But this approach is inconsistent with Criminal Rule 6(s)'s general provision regarding the admissibility of evidence at grand jury.

When interpreting a procedural rule, we proceed as if we were interpreting a statute.[22] We start with the text and its plain meaning.[23] We also consider the rule's purpose and relevant legislative history, if any, "in an attempt to 'give effect to the legislature's intent, with due regard for the meaning the . . . language conveys to others.' "[24] We apply a "sliding-scale approach" to interpreting the language and resolving any ambiguities: "[T]he plainer the . . . language is, the more convincing the evidence of contrary legislative purpose or intent must be" in order to carry weight in discerning the meaning of a statute or rule.[25] We construe the Alaska Rules of Criminal

---

[20] *Id.* 801(d)(3)(H).

[21] *See State v. Powell*, 487 P.3d 609, 614-16 (Alaska App. 2021).

[22] *See Off. of Pub. Advocacy v. Super. Ct.*, 462 P.3d 1000, 1005 (Alaska 2020) (quoting *Alaska Ass'n of Naturopathic Physicians v. State, Dep't of Com.*, 414 P.3d 630, 634 (Alaska 2018)).

[23] *State v. Planned Parenthood of the Great Nw.*, 436 P.3d 984, 992 (Alaska 2019) (citing *Ward v. State, Dep't of Pub. Safety*, 288 P.3d 94, 98 (Alaska 2012)).

[24] *Id.* (quoting *Alyeska Pipeline Serv. Co. v. DeShong*, 77 P.3d 1227, 1234 (Alaska 2003)).

[25] *Id.* (quoting *State v. Fyfe*, 370 P.3d 1092, 1095 (Alaska 2016)).

Procedure "to secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expenses and delay."[26]

We conclude that Criminal Rule 6(s) permits the presentation of evidence to the grand jury if the requirements for admissibility would be met at a future trial. In so holding, we note that the rule provides for a forward-looking assessment. It does not require the impossible: that for evidence for which admissibility hinges on affirmative findings by the court, those procedural steps must be met at the more preliminary grand jury stage. This is apparent from the plain meaning of the Rule's text when read in the context of grand jury proceedings. This interpretation is further supported by the purpose of Criminal Rule 6(s), as evidenced by the case law that preceded its promulgation. We recognize the importance of the grand jury as a key constitutional safeguard for the accused in Alaska, and emphasize that our adherence to the plain language of Criminal Rule 6(s), conditioning the admissibility of evidence before the grand jury on its admissibility at a future trial, is consistent with that role of the grand jury.

> 1. **In the context of grand jury proceedings, the plain language of Criminal Rule 6(s) sets a prospective standard for determining admissibility.**

Criminal Rule 6(s) defines what evidence will be admissible before the grand jury: "Evidence which would be legally admissible at trial shall be admissible before the grand jury." This standard is conditional and forward-looking.[27] In other

---

[26] Alaska R. Crim. P. 2.

[27] We are not persuaded by the distinction between "would" and "will" that Powell argues changes the meaning of the first sentence. "Would" imposes a future condition irrespective of present or past tense. *Would*, MERRIAM WEBSTER'S COLLEGIATE DICTIONARY, 10th Ed. (1999) (describing various conditional meanings of "would" when used in auxiliary function). We also note the dissenting opinion compares the use of "would" in Rule 6(s) and the Administrative Procedure Act. We

words, the evidence as presented to the grand jury, if presented at trial, would meet foundational requirements.[28] This implicitly requires the prosecutor to make a good faith, reasonable judgment that the evidence would be admissible as of the time of trial.

This interpretation makes sense when we consider the context of a grand jury proceeding. Proceedings before the grand jury are secret and ex parte: only the jurors, prosecutors, clerk, witnesses under examination, a law enforcement officer, and an interpreter may be present for the proceeding.[29] No judge is present to resolve evidentiary disputes, nor is a defense attorney present to object to evidence.[30] And a defendant does not "have the right to confront the state's witnesses at the grand jury."[31] Absent unusual circumstances, then, the evidence before the grand jury has not previously been deemed admissible by any authority. Without a judge and adversarial presentation, there is no authority to determine whether the prosecution has met the standards for admissibility during the grand jury proceeding.

For each piece of evidence, then, the grand jury relies largely on the professional judgment of the prosecutor that the evidence would be admissible at trial. The structure of the proceeding includes a substantial role for the prosecutor: to prepare indictments, present evidence, and advise the grand jury of its legal duties, including

---

conclude this comparison is not persuasive because, as we discuss later in this decision, the grand jury context necessarily contemplates a future trial, while an administrative proceeding does not necessarily contemplate a future trial in the same manner. *See* discussion *infra* Section IV.A.1; AS 44.62.560.

[28] *See Wassillie v. State*, 411 P.3d 595, 603-04 (Alaska 2018) (discussing reliability concerns of police reports as basis for inadmissibility under Alaska Evidence Rule 803(8) hearsay exception).

[29] Alaska R. Crim. P. 6(l).

[30] *Id.*

[31] *State v. Nollner*, 749 P.2d 905, 908 (Alaska App. 1988).

applicable laws.[32]  The presentation of evidence must be "reasonably complete and fair," including exculpatory evidence.[33]  As a legal advisor, the prosecutor must instruct the grand jury on the evidence rules, so the grand jury can evaluate the legal sufficiency of the evidence.[34]  But overall, it is the prosecutor's good faith, reasonable judgment that the evidence is admissible, in light of the prosecutor's duty to serve the interests of justice, that guides what evidence is presented to the grand jury.[35]

This commonsense interpretation of the plain language of Criminal Rule 6(s) also reflects the prospective nature of a grand jury proceeding.  The grand jury's standard for indictment is conditional and forward-looking:  if "all the evidence taken together, if unexplained or uncontradicted, would warrant a conviction of the defendant," then the grand jury must indict.[36]  The decision must be based on evidence that "rationally establish[es] the facts" and would "persuade reasonable minded persons" of probable cause of guilt.[37]  The grand jury's primary function, then, is to evaluate the sufficiency of the prosecutor's case, not to find facts or make final determinations.

---

[32]     Alaska R. Crim. P. 6(i).

[33]     *Zurlo v. State*, 506 P.3d 777, 782-83 (Alaska App. 2022) (describing requirements of prosecutor's presentation to grand jury and defining exculpatory evidence as evidence that "tends, in and of itself, to negate the defendant's guilt" (first citing *Williams v. State*, 418 P.3d 870, 877-78 (Alaska App. 2018); and then quoting *Preston v. State*, 615 P.2d 594, 603 (Alaska 1980))).

[34]     Alaska R. Crim. P. 6(i).

[35]     *See Frink v. State*, 597 P.2d 154, 165-66 (Alaska 1979) ("As a representative of the state, a district attorney should seek justice, not simply indictment or conviction.").

[36]     Alaska R. Crim P. 6(r).

[37]     *State v. Parks*, 437 P.2d 642, 643-44 (Alaska 1968) (first quoting *United States v. Costello*, 221 F.2d 668, 677 (2d Cir. 1955); and then quoting *State v. Shelton*, 368 P.2d 817, 818-19 (Alaska 1962)).

Powell argues for a different conclusion, namely that all requirements for admissibility "must be met when the state introduces the evidence at the grand jury proceeding." In support of this argument, Powell points to the remainder of Criminal Rule 6(s) to argue that the State's interpretation of the Rule's initial direction is inconsistent with the Rule's subsequent provision for certain hearsay exceptions specific to grand jury. But this interpretation fails to consider the structure and plain language of the Rule.[38] The provisions of Criminal Rule 6(s) that Powell points to allow certain hearsay evidence that would otherwise be *inadmissible* at trial. More specifically, the rule allows four instances of hearsay that would be *inadmissible* at trial to be admitted before the grand jury, providing three specific exceptions and one more general exception in cases where there is a "compelling justification" for introduction of the evidence.[39] On the other hand, the first sentence of Criminal Rule 6(s), broadly allowing evidence that would be admissible at trial, "encompasses hearsay evidence which would be admissible pursuant to one of the recognized exceptions to the hearsay rule."[40]

Powell also points to Criminal Rule 6(s)(2), which allows hearsay evidence to be admitted to the grand jury in sexual assault cases when the victim is a

---

[38] While Powell points to the canon of construction on whole text, we decline to apply this canon because the plain meaning of Criminal Rule 6(s) is clear. *See West v. Muni. of Anchorage*, 174 P.3d 224, 228-29 (2007).

[39] Alaska R. Crim. P. 6(s)(1), (2), (3), (6).

[40] *Galauska v. State*, 527 P.2d 459, 464 (Alaska 1974). We observe that the dissenting opinion agrees that Criminal Rule 6(s)(1) broadly allows admission before the grand jury of hearsay evidence that is admissible pursuant to one of the recognized exceptions to the hearsay rule, but fails to adequately address how admission of such hearsay squares with its interpretation of the Rule's text, which emphasizes exclusion of all hearsay evidence except as provided in one of the Rule's three specific exceptions or as supported by a compelling justification. Separately we note that evidence admitted under Evidence Rule 801(d)(3) is not hearsay. Alaska R. Evid. 801(d) (defining statements that are not hearsay).

child. One condition is that "the child *will be* available" at trial to testify.[41] Powell compares this requirement to Evidence Rule 801(d)(3), requiring that the child must be *presently* available for cross-examination. Based on this difference, Powell contends that the requirements of Evidence Rule 801(d)(3) must exclude such evidence from the grand jury. But again, Criminal Rule 6(s)(2) addresses hearsay statements that would otherwise be inadmissible at trial. It allows hearsay evidence that is arguably less reliable than that contemplated by Evidence Rule 801(d)(3): for instance, the statements do not have to be video-recorded, and Criminal Rule 6(s)(2) does not require the interviews or questions eliciting the statements at issue to be "conducted in a manner that would avoid undue influence of the victim."[42] Evidence Rule 801(d)(3) in contrast contemplates the requirements for admission at trial.[43] Those requirements must be considered through the conditional lens contained within the first sentence of Criminal Rule 6(s).

In concluding that video-recorded statements made admissible by Evidence Rule 801(d)(3) are nevertheless inadmissible at the grand jury stage, the court of appeals discussed a decision of the Nevada Supreme Court, *Rugamas v. Eighth Judicial District Court*.[44] The *Rugamas* court considered whether a hearsay exception applied within the context of grand jury proceedings.[45] Significantly, during the time period at issue in *Rugamas*, in Nevada "the grand jury [could] receive none but legal

---

[41]     Alaska R. Crim. P. 6(s)(2)(iv) (emphasis added).

[42]     *Compare* Alaska R. Evid. 801(d)(3)(D), (F), *with* Alaska R. Crim. P. 6(s)(2).

[43]     *See* Alaska R. Evid. 101(a); *id.* 101(a) cmt. (describing scope of application of evidentiary rule and noting that Criminal Rule 6(s) governs grand jury evidence).

[44]     *State v. Powell*, 487 P.3d 609, 615 (Alaska App. 2021) (citing *Rugamas v. Eighth Jud. Dist. Ct.*, 305 P.3d 887 (Nev. 2013)).

[45]     *Rugamas*, 305 P.3d at 890.

evidence . . . to the exclusion of hearsay or secondary evidence."[46]  A statutory hearsay exception permitted hearsay statements of child victims to be introduced at criminal proceedings, only if the trial court "finds, in a hearing out of the presence of the jury," that the statements have sufficient indicators of trustworthiness.[47]  The Nevada Supreme Court held that these statements were not admissible before the grand jury, because the "vigorous contest" about admissibility and a hearing is not available at the grand jury stage.[48]

But the Nevada Supreme Court's analysis in *Rugamas* maps poorly onto Alaska law.  Nevada's provisions controlling admissibility of evidence at grand jury were significantly different from our Rule.  Indeed, the Nevada statute centered on the present ("none but legal evidence"),[49] while our Rule is forward-looking and conditional, asking whether foundational requirements would be met at trial.  This key distinction renders the Nevada Supreme Court's reasoning less persuasive when considering the text of our rule.

Powell's interpretation of Criminal Rule 6(s) would also lead to absurd results.  A Rule that all foundational requirements must be met *at* the grand jury proceeding would necessarily lead to the exclusion of many types of evidence we have clearly contemplated being admissible in those proceedings.  For example, our Rules and precedent anticipate the presentation of scientific evidence at a grand jury

---

[46]  Former Nev. Rev. Stat. § 172.135 (1999).  Nevada has since amended its grand jury statute to specifically allow for the hearsay statements of child victims at the grand jury.  *See* 2015 Nev. Stat. ch. 148, § 5 at 578-79 (codified as amended at Nev. Rev. Stat. § 172.135(2)).

[47]  Nev. Rev. Stat. § 51.385.  This statutory hearsay exception still exists for criminal proceedings, but Nevada amended its grand jury statute to allow this form of hearsay at the grand jury.  *See* 2015 Nev. Stat. ch. 148, § 5 at 578-79; Nev. Rev. Stat. § 172.135(2).

[48]  *Rugamas*, 305 P.3d at 895.

[49]  Former Nev. Rev. Stat. § 172.135 (1999).

proceeding without the protections afforded by an adversarial hearing on the reliability of that evidence that would be available to a defendant at trial.[50] Under Powell's interpretation of Criminal Rule 6(s), because no trial judge is available to evaluate scientific evidence for accuracy and reliability, as required by *Daubert/Coon*, scientific expert reports and testimony would be excluded from grand jury proceedings.[51]

It is not just scientific evidence that would be excluded under Powell's interpretation of Criminal Rule 6(s). Character evidence under Alaska Evidence Rule 404(b)(2)–(4) would be excluded without a hearing.[52] Indeed, Powell's reading of Criminal Rule 6(s) could be interpreted to exclude all evidence

---

[50] *See Dague v. State*, 81 P.3d 274, 276 (Alaska 2003) (discussing testimony before grand jury by expert in pediatrics and child abuse); *Frink v. State*, 597 P.2d 154, 163 (Alaska 1979) (deciding scientific expert reports would have been admissible at grand jury) (quoting *State v. Gieffels*, 554 P.2d 460, 465 n.22 (Alaska 1976)); *McKinnon v. State*, 526 P.2d 18, 27-28 (Alaska 1974) (deciding lab report was admissible at grand jury); *State v. Coon*, 974 P.2d 386, 393-96 (Alaska 1999) (adopting *Daubert* test for admission of scientific evidence under Evidence Rule 702 and requiring trial judge to first determine admissibility under that standard) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589-95 (1993)), *abrogated on other grounds by State v. Sharpe*, 435 P.3d 887, 899-900 (Alaska 2019); *see also Henry v. State*, No. A–11315, 2014 WL 7005580, at *4 (Alaska App. Dec. 10, 2014) (discussing nurse's testimony at grand jury about whether stab wounds were life-threatening); *Pickering v. State*, No. A–9943, 2011 WL 488904, at *1-2 (Alaska App. Feb. 9, 2011) (discussing testimony about blood spatter presented to grand jury); *Paulo v. State*, No. A-8948, 2008 WL 314182, at *1-2 (Alaska App. Feb. 6, 2008) (discussing physician's and paramedic's testimony to grand jury regarding likely causes of victim's injuries); *Wood v. State*, No. A-4765, 1994 WL 16196223, at *3-5 (Alaska App. July 13, 1994) (concluding autopsy report was admissible at grand jury); *St. John v. State*, 715 P.2d 1205, 1211 (Alaska App. 1986) (determining medical records and results of blood-alcohol test were admissible before grand jury).

[51] *See Coon*, 974 P.2d at 393-96 (citing *Daubert*, 509 U.S. at 589-95).

[52] *See Bingaman v. State*, 76 P.3d 398, 416 (Alaska App. 2003) (holding "trial judges *must* conduct a balancing under Evidence Rule 403 and *must* explain their decision on the record" when State offers evidence of defendant's prior bad acts allowed under Evidence Rule 404(b)(2)–(4) (emphasis in original)).

requiring an adversarial hearing and judicial decision on its admissibility before it is introduced at trial, a result clearly inconsistent with our precedent. Our interpretation of Criminal Rule 6(s) maintains the reliability of evidence presented to the grand jury, through examination of how the Rules of Evidence will determine admissibility at trial, while not casting away evidence due merely to the preliminary nature and timing of the proceedings.

Court of appeals precedent also supports our interpretation of Criminal Rule 6(s).[53] In *State v. Nollner*, for example, a child victim of sexual assault identified the defendant to an examining physician.[54] The case law regarding whether such a statement could fall within the hearsay exception for statements made for the purpose of receiving medical treatment was evolving at the time; the court of appeals held that the authority "in favor of admitting [such] statements . . . [was] sufficiently strong" to justify the prosecution's decision to present the statements to the grand jury.[55] In light of the uncertain but probable admissibility of the statements, the court found a reasonable, good faith belief of admissibility to be sufficient to support admissibility before the grand jury.[56] The court of appeals acknowledged the role of the good faith assessment of the prosecutor at the grand jury stage for evidence whose admissibility at trial is probable, but likely to be contested.[57]

---

[53]  *State v. Nollner*, 749 P.2d 905, 908 (Alaska App. 1988).

[54]  *Id.* at 907-08.

[55]  *Id* at 908; *see also Davison v. State*, 282 P.3d 1262, 1267-70 (Alaska 2012) (establishing test for determining when hearsay statements of child victims to physicians performing forensic exams are admissible under exception for statements for purpose of medical diagnosis or treatment).

[56]  *Id.* at 908-09. The court also found, in the alternative, that the child's inability to testify was a compelling justification. *Id.*

[57]  *Id.* at 908-09, 909 n.4.

Both the plain meaning of the text of Criminal Rule 6(s) and the function of grand jury proceedings support the prospective and conditional nature of the Rule. The Rule plainly allows for the admission of evidence at grand jury where that evidence would be admissible at trial. This remains true where certain foundational requirements cannot be met in the grand jury context, so long as the prosecutor has a good faith belief that those requirements would be met at or by the time of trial. As such, to the extent the recorded statements at issue in this matter would be admissible at trial, they were admissible before the grand jury.

### 2. The purpose of Criminal Rule 6(s) confirms the plain meaning.

Before Criminal Rule 6(s) was adopted, we limited the admissibility of hearsay before the grand jury in a series of cases.[58] First, in *Parks v. State*, we held that all evidence coming before the grand jury must "rationally establish the facts sought to be established," and that hearsay evidence could meet that standard.[59] Later, in *Burkholder v. State*, we held that hearsay without any indication of reliability does not provide sufficient probative value to be the basis of an indictment, because it cannot rationally establish any facts.[60] In *Taggard v. State* we clarified that this is a two-part analysis.[61] Whenever hearsay evidence has been introduced to the grand jury, courts should first determine whether sufficient evidence was presented to rationally establish the facts and second "determine whether the credibility of the informant has been sufficiently established so that the grand jury may know how much weight to give to

---

[58] *See Taggard v. State*, 500 P.2d 238, 242-43 (Alaska 1972); *Burkholder v. State*, 491 P.2d 754, 757-58 (Alaska 1971); *State v. Parks*, 437 P.2d 642, 644-45 (Alaska 1968).

[59] *Parks*, 437 P.2d at 644-45.

[60] *Burkholder*, 491 P.2d at 757-58.

[61] *Taggard*, 500 P.2d at 242-43.

the hearsay testimony."[62] The evidence of credibility must either demonstrate the reliability of the declarant or independently corroborate the declarant's statement.[63] In each of these cases, the focus was not on whether the evidence would later be admissible at trial, but whether it was sufficiently reliable to support a reasoned decision about the likelihood of the accused being found guilty at a future criminal trial.

In *Taggard* we noted our approval of the American Bar Association's Standards for Criminal Justice on the role of the prosecutor at grand jury: "A prosecutor should present to the grand jury only evidence which he believes would be admissible at trial."[64] Shortly thereafter we amended Criminal Rule 6, adding similar language.[65] Criminal Rule 6(s) is a functionally equivalent conditional and forward-looking standard, instructing the prosecutor to make a good faith, reasonable assessment of whether evidence would be admissible at trial in deciding what to present before the grand jury. Criminal Rule 6(s) also limited what otherwise inadmissible hearsay evidence could be heard before the grand jury. Outside of the Rule's three specific exceptions for hearsay that is not otherwise admissible, there must be a "compelling justification" to introduce hearsay that would not be admissible at trial,[66] which we have

---

[62]     *Id.* at 242-43.

[63]     *Id.*

[64]     *Id.* at 242 (quoting AM. BAR ASS'N PROJECT ON STANDARDS FOR CRIM. JUST., STANDARDS RELATING TO THE PROSECUTION FUNCTION AND THE DEFENSE FUNCTION § 3.6(a), at 88 (Approved Draft 1971)).

[65]     Alaska Supreme Court Order No. 157 (Jan. 22, 1973) ("Admissibility of Evidence. Evidence which would be legally admissible at trial shall be admissible before the grand jury. In appropriate cases, however, witnesses may be presented to summarize admissible evidence if the admissible evidence will be available at trial. Hearsay evidence shall not be presented to the grand jury absent compelling justification for its introduction. If hearsay evidence is presented to the grand jury, the reasons for its use shall be stated on the record.").

[66]     Alaska R. Crim. P. 6(s)(1).

interpreted to mean that the hearsay is "necessary."[67] Additionally, we retained the *Taggard* test for inadmissible hearsay evidence shown to the grand jury under Criminal Rule 6(s): such hearsay must be sufficiently specific and reliable to be admissible before the grand jury, in addition to having a compelling justification.[68]

Our precedent thus confirms that the overall purpose of Criminal Rule 6(s) is to ensure that the grand jury has evidence with which it can make a "reliable determination" of probability of guilt, not necessarily to exclude all hearsay.[69] The Rules of Evidence set forth standards that indicate which evidence is reliable. Criminal Rule 6(s), read in concert with the Rules of Evidence, instructs which evidence is sufficiently reliable to present to the grand jury. But to the extent that admissibility cannot be known without objection or judicial review, Alaska grand juries have previously relied, and continue to rely, upon the judgment of the prosecutor that the evidence would be admissible, as well as the check on that judgment that comes from post-indictment motion work and potential dismissal.

### 3. This interpretation does not undermine the grand jury's protective function for the accused.

We recognize Powell's concern about ensuring reliable evidence before the grand jury, and the potential harm to wrongly accused persons if indictments can be returned on unreliable evidence. Our interpretation maintains protections against the admission of unreliable evidence in accord with our most recent grand jury-related decision, *Wassillie v. State*.[70] In *Wassillie* we dismissed an indictment and reversed Wassillie's subsequent conviction because the indictment and conviction were based

---

[67]  *State v. Gieffels*, 554 P.2d 460, 464-65 (Alaska 1976).

[68]  *Galauska v. State*, 527 P.2d 459, 464-66 (Alaska 1974) (quoting *Taggard*, 500 P.2d at 242-43.

[69]  *Gieffels*, 554 P.2d at 465.

[70]  411 P.3d 595 (Alaska 2018).

primarily on unreliable and inadmissible hearsay evidence.[71] In particular the bulk of the evidence relied upon consisted of an incident report describing an alleged escape from a halfway house.[72] We concluded unequivocally that the incident report lacked the indicia of reliability inherent in meeting the business records exception, because it was written by a staff member who was an active participant in an investigation and it was not a routine record.[73] We applied a forward-looking interpretation of Rule 6(s) in recognizing that the grand jury heard hearsay evidence that could never meet the business records exception to hearsay at trial, and that the evidence clearly would not otherwise be legally admissible at trial.

Indeed, the contrast between this case and *Wassillie* highlights an important limitation on the admissibility of evidence under Criminal Rule 6(s). The prosecutor must provide a sufficient foundation for the grand jury to be able to assess the reliability of evidence that is either hearsay or qualifies as an exception to hearsay. This does not lead to the slippery slope that Powell predicts. Rather, this interpretation ensures there are still limits on evidence admissible before the grand jury, requiring a sufficient foundation to assess reliability.

We also note the other limits on prosecutorial presentations to the grand jury: the prosecutor must present exculpatory evidence and the prosecutor's presentation must be a fair representation of the evidence.[74] A defendant can file a motion to dismiss the indictment to challenge any underlying issues.[75] Evidence admitted at grand jury may also later be excluded from trial after a suppression hearing

---

[71]  *Id.* at 608-09, 614.

[72]  *Id.* at 598.

[73]  *Id.* at 602-04.

[74]  *See Zurlo v. State*, 506 P.3d 777, 783-84 (Alaska App. 2022).

[75]  Alaska R. Crim. P. 12(b)(2).

if it was obtained improperly.[76]  Further, we do not disturb our previous holdings that if an indictment failing to meet these standards results in a conviction, that conviction will be overturned, even following an error-free trial.[77]

Additionally, the dual function of the grand jury supports this interpretation of Rule 6(s).  The grand jury is an important preliminary step in criminal prosecutions, serving to protect the public against prosecutorial overreach.[78]  The grand jury, however, serves a dual purpose:  it is "both a shield and sword of justice."[79]  The grand jury is simultaneously "an investigatory and accusatory body, tasked with determining whether criminal proceedings against the accused should be instituted," and a "protective" body, protecting the rights and interests of the accused against governmental abuses.[80]  To effectuate these dual purposes, the grand jury must hear sufficient evidence in order to make a "reliable determination . . . as to the probability

---

[76]  *See, e.g., State v. White*, 707 P.2d 271, 279-80 (Alaska App. 1985) (deciding that grand jury had sufficient evidence, disregarding fruits of illegal search, to indict).

[77]  *Wassillie*, 411 P.3d at 609 ("Only by reversing a conviction based on an invalid indictment can we safeguard the grand jury's role as a check on overzealous prosecution."); *Adams v. State*, 598 P.2d 503, 510 (Alaska 1979) ("If we were to find that a trial could validate an otherwise invalid indictment, the right to indictment by a grand jury would become a nullity and the grand jury would cease to operate as a check upon the district attorney's power to initiate prosecution."); *Taggard v. State*, 500 P.2d 238, 243 (Alaska 1972) ("If the indictment is seriously flawed, the conviction cannot stand"); *see also Zurlo*, 506 P.3d at 788 ("Alaska law is clear that the grand jury indictment is the 'foundation' underlying a criminal prosecution in this state:  'If the indictment is seriously flawed, the conviction cannot stand.' " (quoting *Taggard*, 500 P.2d at 243)).

[78]  *Wassillie*, 411 P.3d at 605-07 (summarizing discussion of amendment at Committee on the Preamble and the Bill of Rights during Proceedings of Alaska Constitutional Convention).

[79]  *Cameron v. State*, 171 P.3d 1154, 1156 (Alaska 2007).

[80]  *Id.* (first citing *United States v. Calandra*, 414 U.S. 338, 343-44 (1974); and then quoting *Preston v. State*, 615 P.2d 594, 602 (Alaska 1980)).

of [the accused's] guilt."[81]  If Criminal Rule 6(s) was read to exclude evidence that would be legally admissible at trial or require pre-litigation of such evidence, the investigatory and accusatory function of the grand jury would be undermined.  Instead, the natural, prospective reading of Criminal Rule 6(s) balances these two functions.

In all, we conclude that Criminal Rule 6(s) means what the rule plainly states — it permits the presentation of evidence to the grand jury that would be admissible at a future trial.  And we reiterate that this ruling is consistent with both precedent and the function and nature of grand jury proceedings.

## B. The Interplay Between Criminal Rule 6(s) And Evidence Rule 801(d)(3) Effectuates The Legislative Purposes Underlying Rule 801(d)(3).

Contrary to Powell's argument and the court of appeals' analysis,[82] it is hardly surprising that the text of Evidence Rule 801(d)(3) does not address admissibility at grand jury proceedings.  And this certainly does not establish an intent by the legislature that evidence admissible under Evidence Rule 801(d)(3) may not be presented to the grand jury.  Indeed, the Evidence Rules need not particularly address admissibility during grand jury proceedings, because Criminal Rule 6(s) performs that function.  Applying Criminal Rule 6(s) to determine what evidence contemplated by Evidence Rule 801(d)(3) may be presented to the grand jury both maintains the

---

[81]     *State v. Gieffels*, 554 P.2d 460, 465 (Alaska 1976).

[82]     *See State v. Powell*, 487 P.3d 609, 614 (Alaska App. 2021) ("The legislative history of Evidence Rule 801(d)(3) contains no discussion at all about whether or how the rule could be applied in the grand jury context.  In contrast, there was extensive discussion in the legislative history about the application of the rule's requirements at trial.").

reliability of evidence presented to the grand jury and is consistent with the legislature's goals in enacting Evidence Rule 801(d)(3).[83]

As acknowledged by both Powell and the court of appeals, one of the legislature's goals in enacting Evidence Rule 801(d)(3) was to avoid repeated traumatization of child victims while providing reliable evidence of crimes involving child victims to the jury.[84] The legislature intended to "amplify the voices of children who have been abused and children who have been sexually assaulted and let their voices shine in a courtroom as strongly as possible" by allowing video-recorded statements to be admitted, instead of forcing children to testify and potentially be unable to recount an accurate version of events.[85] Additionally, the legislature wanted to maintain protection of defendants' rights to confront their accusers while still admitting these recorded statements.[86] Recognizing the interplay between Criminal Rule 6(s) and Evidence Rule 801(d)(3), with Evidence Rule 801(d)(3) addressing admissibility of

---

[83] We do not mean to imply here that Criminal Rule 6(s) should be interpreted so as to effectuate the legislature's goals in subsequently promulgating Evidence Rule 801(d)(3); rather, we observe how the interplay between the two rules explains the consistency between the legislature's stated goals in enacting Evidence Rule 801(d)(3) and that rule's provisions regarding admissibility at trial, without separate mention of admissibility at grand jury proceedings.

[84] *See Hayes v. State*, 474 P.3d 1179, 1184-85 (Alaska App. 2020) (citing Statement of Sen. Hollis French at 9:27:09-9:28:30, Hearing on S.B. 117 Before the S. Judiciary Comm., 24th Leg., 1st Sess. (Mar. 31, 2005)); *Augustine v. State*, 355 P.3d 573, 582-83 (Alaska App. 2015) (citing Statement of Sen. French at 9:26:58-9:31:02, Hearing on S.B. 117 Before the S. Judiciary Comm., 24th Leg., 1st Sess. (Mar. 31, 2005)).

[85] Statement of Sen. French at 39:12-39:21, Deb. on J. Comm. Substitute for Sponsor Substitute for H.B. 53 (S.C.S. C.S.S.S.H.B. 53) (FIN) S. Floor Sess., 24th Leg., 1st Sess. (May 9, 2005).

[86] Statements of Sen. French, Sen. Gene Therriault, and Sen. Ralph Seekins at 9:39:01-9:44:26, Hearing on S.B. 117 Before the S. Judiciary Comm., 24th Leg., 1st Sess. (Mar. 31, 2005), *cited in Augustine,* 355 P.3d at 584.

evidence at trial and Criminal Rule 6(s) addressing admissibility before the grand jury, aligns with these legislative purposes by limiting the number of times child victims have to testify without encroaching upon a defendant's right to confront witnesses at trial.

1. **The prospective reading of Criminal Rule 6(s) effectuates the legislature's goals related to reliability of evidence and minimizing re-traumatization of child victims.**

While the legislature appears to have most directly considered the application of Evidence Rule 801(d)(3) to trial proceedings, the concerns consistently stated by legislators about the impact of requiring child victims to repeat their account multiple times throughout the criminal justice process apply with equal force to the prospect of requiring children to testify before a grand jury.[87] Through Evidence Rule 801(d)(3), the legislature sought to ensure that child victims of crime would not unnecessarily be required to testify in court proceedings.[88] Along these lines, legislators were concerned both with promoting the well-being of the child[89] and protecting the efficacy of the prosecution.[90] Those dual concerns are wholly relevant

---

[87] *See* Statement of Sen. French at 30:07-31:09, Deb. on S.C.S. C.S.S.S.H.B. 53 (FIN) S. Floor Sess., 24th Leg., 1st Sess. (May 9, 2005) (listing the large number of times children were then required to retell stories); Statement of Sen. Seekins at 9:43:08-9:43:25, Hearing on S.B. 117 Before the S. Judiciary Comm., 24th Leg., 1st Sess. (Mar. 31, 2005) (agreeing with Senator Therriault that "we don't want to, in this process, force the child once again to reiterate under direct testimony the allegations that are already included in the tape").

[88] Statement of Sen. French at 32:37-33:07, Deb. on S.C.S. C.S.S.S.H.B. 53 (FIN) S. Floor Sess., 24th Leg., 1st Sess. (May 9, 2005) (describing how under Rule 801(d)(3) child advocacy center recording would supplant child having to testify repeatedly on stand, "as long as the child is available to be cross-examined").

[89] *Id.* at 30:48-31:15 (describing pain child faces when forced to testify about "the most shameful and painful private acts that one can imagine" in repeated interviews).

[90] Statement of Sen. French at 9:28:22-9:28:48, Hearing on S.B. 117 Before the S. Judiciary Comm., 24th Leg., 1st Sess. (Mar. 31, 2005) (expressing concerns about pressure of direct examination causing child to tell unconvincing story).

throughout children's involvement in the criminal justice system, including during and surrounding grand jury proceedings. A brief review of the legislative history confirms this conclusion.

Evidence Rule 801(d)(3) was introduced to the Senate Judiciary Committee on March 31, 2005, as Senate Bill 117 by Senator Hollis French.[91] In introducing the legislation, Senator French asserted that admission of interviews conducted at child advocacy centers would allow the State to enhance the efficacy and accuracy of its prosecutions while maintaining the safety and security of child victims, noting that the child advocacy center setting would make the child victims feel "safer and more confident."[92]

The other senators on the Judiciary Committee were concerned that language in the proposed bill could inadvertently require a child to testify. Senator Gretchen Guess questioned the wording of subsection (B),[93] originally written to require that "the victim is present at the proceeding and available to testify."[94] She thought that the requirement of a victim's "presence" would be read literally to require physical presence in the courtroom as opposed to availability for cross-examination, and was concerned about the intimidation that a child might experience if forced to observe the trial of the offender.[95] And Senator Gene Therriault voiced similar concerns, specifically that the term "testify" might be too broad, and it could imply that

---

[91]    *Id.* at 9:27:00-9:29:31.

[92]    *Id.* at 9:27:17-9:28:52 (detailing how environment of child advocacy centers makes children more comfortable, and thus more likely to provide detailed and accurate testimony).

[93]    Statement of Sen. Gretchen Guess at 9:35:23-9:36:13, Hearing on S.B. 117 Before the S. Judiciary Comm., 24th Leg., 1st Sess. (Mar. 31, 2005).

[94]    S.B. 117, 24th Leg., 1st Sess. (Feb. 28, 2005).

[95]    Statement of Sen. Guess at 9:35:23-9:36:13, Hearing on S.B. 117 Before the S. Judiciary Comm., 24th Leg., 1st Sess. (Mar. 31, 2005).

the prosecution must call victims as witnesses under direct examination, thereby frustrating the purpose of the proposed Rule.[96] Because these interpretations would be inconsistent with the intent of Evidence Rule 801(d)(3), the committee amended subsection (B) to require only that "the victim is available for cross-examination."[97]

SB 117 was otherwise largely unchanged when it reached the Senate floor.[98] Senator French gave a detailed introductory statement about the purpose of the hearsay exception contained in the proposed Evidence Rule 801(d)(3).[99] He asserted that, in contrast with the intimidating atmosphere inherent in courtroom testimony, child advocacy center interviews facilitate children's open and honest telling of events they have experienced.[100] He contended that interviews conducted by trained professionals within the specialized setting of the child advocacy center often yield more complete, accurate, and intelligible information than a child's testimony in open court.[101] Turning from the reliability of the evidence to the welfare of the child, he discussed the many

---

[96] Statement of Sen. Therriault at 9:38:35-9:39:01, Hearing on S.B. 117 Before the S. Judiciary Comm., 24th Leg., 1st Sess. (Mar. 31, 2005).

[97] *Id.* at 9:45:45-9:46:10 (amending section (B) to read "the victim is present at the proceeding and available for cross examination"); Statements of Sen. Guess and Sen. Seekins at 9:47:36-9:48:23, Hearing on S.B. 117 Before the S. Judiciary Comm., 24th Leg., 1st Sess. (Mar. 31, 2005) (amending section (B) to read "the victim is available for cross examination").

[98] On May 9, 2005, S.B. 117 was incorporated into an unrelated bill, H.B. 53, and presented to the Senate floor for debate. S.C.S. C.S.S.S.H.B. 53 (FIN), 24th Leg., 1st Sess. (2005); Deb. on S.C.S. C.S.S.S.H.B. 53 (FIN) S. Floor Sess., 24th Leg., 1st Sess. (May 9, 2005). *See* Statement of Sen. Guess at 39:50-40:10, Deb. on S.C.S. C.S.S.S.H.B. 53 (FIN) S. Floor Sess., 24th Leg., 1st Sess. (May 9, 2005).

[99] Statement of Sen. French at 29:50-33:07, Deb. on S.C.S. C.S.S.S.H.B. 53 (FIN) S. Floor Sess., 24th Leg., 1st Sess. (May 9, 2005) (describing "gauntlet of interviews" that child victims must go through in order to aid prosecution).

[100] *Id.*

[101] *Id.*

times child victims are required to retell stories, including that "the district attorney would want to hear the story before it was presented to the grand jury [and] the story would be repeated again before the grand jury."[102] He explained that "if [the video recording is] used correctly, we can spare a child the pain of having to go through this story over and over and over again."[103]

The goal of the legislation was to create, through the use of video recording, a "single interview" to serve as "*the* record of the incident."[104] This purpose would be undermined if a child were required to testify before the grand jury. Although the defendant and the judge are not present during a grand jury proceeding, the setting of such a proceeding is nonetheless formal and unfamiliar for children, and a child's experience testifying before a large panel of grand jurors could certainly be overwhelming or traumatic.[105] Moreover, the legislature's concern about ensuring accurate information through use of child advocacy center interviews rather than having the child testify in a formal courtroom proceeding applies not just to the trial setting but to grand jury proceedings as well.[106] The legislature's emphasis on the admissibility of recorded child advocacy center interviews at trial should not be assumed to indicate that the legislature intended Evidence Rule 801(d)(3) not to apply to grand jury proceedings. Rather, in light of the prospective nature of Criminal Rule 6(s), it would be consistent

---

[102] *Id.* at 30:07-31:09.

[103] *Id.* at 31:48-31:55.

[104] *Id.* at 31:45-31:50 (emphasis added).

[105] *See id.* at 30:48-31:15 (describing pain of being forced to testify about "the most shameful and painful private acts that one can imagine"); *State v. Nollner*, 749 P.2d 905, 907 (Alaska App. 1988) (describing difficulty child victim had while testifying before the grand jury).

[106] Statement of Sen. French at 31:57-32:36, Deb. on S.C.S. C.S.S.S.H.B. 53 (FIN) S. Floor Sess., 24th Leg., 1st Sess. (May 9, 2005) (describing how "excruciating" it can be to testify in room full of strangers and authority figures).

for the legislature to have assumed that the recorded interviews would be admissible at grand jury.

> **2. The interplay between Criminal Rule 6(s) and Evidence Rule 801(d)(3) does not abridge the defendant's right to confront witnesses at trial.**

In constructing Evidence Rule 801(d)(3), the Senate Judiciary Committee sought to preserve a defendant's constitutional rights of confrontation. Both the United States and the Alaska Constitutions guarantee individuals accused of a crime the right to confront the witnesses against them.[107] The legislature sought to preserve this right in part (B) of Evidence Rule 801(d)(3), which requires that the child be available for cross-examination.[108] The Committee's discussion of the bill was largely focused on ensuring admission of child advocacy center interviews as evidence while protecting defendants' constitutional rights.[109] Indeed, on the Senate floor, Senator French contended that the child's availability for cross-examination protects this right, providing a robust balance between the safety of children, the administration of justice, and the constitutional rights of defendants.[110]

---

[107] U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."); Alaska Const. art. I, § 11 ("In all criminal prosecutions, the accused shall have the right . . . to be confronted with the witnesses against him . . . .").

[108] Alaska R. Evid. 801(d)(3)(B).

[109] *See* Statements of Sen. French, Sen. Therriault, Sen. Guess, and Sen. Seekins at 9:27:01-9:46:10, Hearing on S.B. 117 Before the S. Judiciary Comm., 24th Leg., 1st Sess. (Mar. 31, 2005).

[110] Statement of Sen. French at 32:47-33:05, Deb. on S.C.S. C.S.S.S.H.B. 53 (FIN) S. Floor Sess., 24th Leg., 1st Sess. (May 9, 2005).

The right to confront witnesses has been interpreted as the right to cross-examine those witnesses at trial.[111]  The right is a *trial* right that does not apply to the grand jury stage of proceedings.[112]  The court of appeals acknowledged this in its decision, but focused on this as an indication that the legislature did not intend for the Evidence Rule to apply to grand jury proceedings at all.[113]  But considering the prospective nature of Criminal Rule 6(s) and the lack of confrontation rights at grand jury, there would have been no reason for the legislature to comment on confrontation rights in the grand jury context.  Rather, it would be consistent for the legislature to assume that the question of cross-examination would not apply to grand jury proceedings.

The plain language of Criminal Rule 6(s) provides a prospective standard for examining whether evidence *would be* admissible at a future trial.  This aligns with

---

[111]     *See e.g.*, *Davis v. Alaska*, 415 U.S. 308, 315-18 (1974) (holding denial of cross-examination of key witness to show probation status was unconstitutional); *Crawford v. Washington*, 541 U.S. 36, 68-69 (2004) (holding admission of out-of-court testimonial statements unconstitutional because of denial of opportunity for cross-examination); *see also id.* at 59 n.9 ("[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements.").

[112]     *State v. Nollner*, 749 P.2d 905, 908 (Alaska App. 1988) ("A defendant does not, however, have the right to confront the state's witnesses at the grand jury."); *see also Barber v. Page*, 390 U.S. 719, 725 (1968) ("The right to confrontation is basically a trial right . . . simply because [the function of a preliminary hearing] is the more limited one of determining whether probable cause exists to hold the accused for trial."); *California v. Green*, 399 U.S. 149, 157 (1970) ("[I]t is th[e] literal right to 'confront' the witness at the time of trial that forms the core of the values furthered by the Confrontation Clause . . . ."); *Lemon v. State*, 514 P.2d 1151, 1153 (Alaska 1973) (noting that Confrontation Clause in Alaska Constitution parallels Confrontation Clause in U.S. Constitution).

[113]     *State v. Powell*, 487 P.3d 609, 612-14 (Alaska App. 2021) ("[A]lthough a defendant has the right to cross-examine witnesses at trial, there is no right to cross-examination at a grand jury proceeding.").

the legislature's intent behind Evidence Rule 801(d)(3), requiring that the defendant *would* be able to confront his accuser in the context of trial. And again, this interplay between Criminal Rule 6(s) and Evidence Rule 801(d)(3) explains the consistency between Evidence Rule 801(d)(3)'s provisions specific to admissibility at trial, without specific discussion of grand jury proceedings, and the dual purposes behind that Rule "(1) to protect children from the traumatic experience of testifying; and (2) to provide the best evidence of what happened to the jury."[114]

### C. The Child Advocacy Center Interview May Have Been Admissible At Powell's Grand Jury.

We do not ultimately rule on the admissibility of the recorded interviews before the grand jury here, as the superior court has not yet ruled on the question in light of our interpretation of Criminal Rule 6(s). To the extent that further substantive proceedings on remand were possible, we would remand to the court of appeals, to remand to the superior court, for the superior court to determine the admissibility of the recorded child advocacy center interviews of A.S. and A.O. consistent with this decision. This would require the superior court to determine the admissibility of the recordings before the grand jury by analyzing whether the recordings would meet the requirements of Evidence Rule 801(d)(3) as of the time of trial.

## V. CONCLUSION

We REVERSE the court of appeals' decision and REMAND for proceedings consistent with this decision, understanding that such proceedings are impacted by Powell's death.

---

[114] *Hayes v. State*, 474 P.3d 1179, 1184-85 (Alaska App. 2020).

PATE, Justice, with whom CARNEY, Justice, joins, dissenting.

## VI.   INTRODUCTION

Our constitution guarantees the right to an indictment by a grand jury,[1] a right that we have held "should operate to control abuses by the government and protect the interests of the accused."[2]  Indictment by a grand jury "is not just a step in [the criminal] process; it is a foundation stone."[3]

Nearly 50 years ago, we recognized that the presentation of hearsay evidence to the grand jury, "if unchecked, would erode the protective value of the grand jury so as to make it nothing more than an administrative arm of the district attorney's office."[4]  To guard against that erosion, we enacted a Criminal Rule providing that "hearsay evidence shall not be presented to the grand jury absent compelling justification for its introduction."[5]

---

[1]     Alaska Const. art. I, § 8.

[2]     *Coleman v. State*, 553 P.2d 40, 47 (Alaska 1976); *see also State v. Gieffels*, 554 P.2d 460, 465 (Alaska 1976) ("[B]efore the accused suffers any of the grave inconveniences which are apt to ensue upon the return of a felony indictment, there should be a reliable determination made as to the probability of his guilt."); *Cameron v. State*, 171 P.3d 1154, 1157 (Alaska 2007) ("[Our] attention to the grand jury's protective role helps prevent the grand jury from becoming a mere 'rubber stamp' for the prosecutor." (quoting *United States v. Al Mudarris*, 695 F.2d 1182, 1188 (9th Cir. 1983))); *State v. Parks*, 437 P.2d 642, 646 (Alaska 1968) (Rabinowitz, J., concurring) ("[O]ur system of criminal laws must include procedures whereby cases in which there is an absence of reliable evidence can be detected and filtered out prior to the trial stage.").

[3]     *Wassillie v. State*, 411 P.3d 595, 608 (Alaska 2018).

[4]     *Gieffels*, 554 P.2d at 465.

[5]     *See* former Alaska R. Crim. P. 6(r) (2018); Alaska Supreme Court Order No. 157 (Jan. 22, 1973); *see also Gieffels*, 554 P.2d at 464.  Subsequent rule changes added exceptions, *see, e.g.*, ch. 81, § 21, SLA 1998, none of which are directly at issue in this case.  As the court notes, this rule was also re-lettered to Rule 6(s) effective December 2022.  *See* Alaska Supreme Court Order No. 1993 (Nov. 29, 2022).  Like the

The State violated this rule when it presented the recorded statement of a 14-year-old child to the grand jury in this case. The State has not argued that it had a compelling justification for presenting the recorded statement rather than live testimony. And the State could not satisfy the foundational requirements of the hearsay exclusion in Alaska Evidence Rule 801(d)(3), on which it attempted to rely. The court's interpretation of Alaska Criminal Rule 6(s) to allow the presentation of hearsay based on a prediction about its admissibility at a future trial is inconsistent with the history and purpose of the rule. Although the legislature amended one of the applicable rules while this case was pending before us,[6] I believe the rules that applied at the time of this grand jury proceeding and the attendant circumstances did not allow the State to present the recorded statement to the grand jury. I would affirm the judgment of the court of appeals and therefore respectfully dissent.

## VII. DISCUSSION

### A. The State Could Not Present Hearsay To The Grand Jury Unless An Exception Applied Or It Showed A Compelling Justification.

There are two general rules at the center of this case. The first rule is that an out-of-court statement offered to prove the truth of the matter asserted is hearsay.[7] The second is that "hearsay evidence shall not be presented to the grand jury absent compelling justification for its introduction."[8]

Some out-of-court statements that are offered for their truth are excluded from the first rule and are not hearsay.[9] And some hearsay can be presented to a grand

---

court, I will refer to it as "Rule 6(s)." Finally, while this case was pending before us, the legislature passed a bill amending Rule 6(s) significantly, including by removing the language quoted here. *See* ch.11, §§ 1, 61, SLA 2024.

[6]  *See* ch.11, §§ 1, 61, SLA 2024.

[7]  Alaska R. Evid. 801(c).

[8]  Alaska R. Crim. P. 6(s)(1).

[9]  *See* Alaska R. Evid. 801(d).

jury: For example, under certain conditions, the State may present hearsay evidence of an out-of-court statement by a victim of a sexual offense who is under 10 years of age.[10] The State may also present some out-of-court statements to a grand jury through the testimony of a peace officer,[11] and it is allowed to present evidence of prior convictions through various sources of hearsay when a prior conviction is an element of an offense.[12] Finally, it may present hearsay statements under any of the many exceptions to the rule that otherwise prohibits their admission.[13]

When none of these exclusions or exceptions apply, the State may present hearsay to a grand jury if it has a "compelling justification" for doing so.[14] Accordingly, we have determined that the State may present hearsay evidence to a grand jury when the witness is not available to testify[15] or the witness is a co-defendant who could avoid

---

[10]     *See* Alaska R. Crim. P. 6(s)(2).

[11]     *See* Alaska R. Crim. P. 6(s)(3).

[12]     *See* Alaska R. Crim. P. 6(s)(6).

[13]     *See* Alaska R. Crim. P. 6(s)(1); *Galauska v. State*, 527 P.2d 459, 464 (Alaska 1974) ("The first sentence of [Criminal Rule 6(s)] deals with the presentment of admissible evidence and encompasses hearsay evidence which would be admissible pursuant to one of the recognized exceptions to the hearsay rule."); Alaska R. Evid. 802-804. Following our decision in *Galauska*, the legislature amended Rule 6 to allow admission of additional types of hearsay evidence in grand jury proceedings. *See* Alaska R. Crim. P. 6(s)(2); *see also* discussion *infra* Section II.B. The amendments did not disturb our holding in *Galauska* that the first sentence of Criminal Rule 6(s) allows admission of hearsay evidence that is otherwise admissible under an exception or exclusion in the Alaska Rules of Evidence without the need for a compelling justification. *Galauska*, 527 P.2d at 464.

[14]     *See* Alaska R. Crim. P. 6(s)(1); *State v. Gieffels*, 554 P.2d 460, 464-65 (Alaska 1976).

[15]     *See, e.g.*, *State v. Johnson*, 525 P.2d 532, 536 (Alaska 1974) (describing presentation of hearsay to grand jury as "justifiable" because of "the necessity of [the witness's] absence").

testifying by asserting the privilege against self-incrimination.[16] On the other hand, we have held that the mere fact that it would be expensive to transport an otherwise-available witness to appear before a grand jury is not a "compelling justification" for the presentation of hearsay when no other exception applies.[17]

In this case, the State has not argued that it had a "compelling justification" for introducing the recorded statement. Indeed, the State would have had difficulty proving such a justification in this case, given that it told the grand jury that the child witness was available to testify upon request. In an appropriate case, we could be asked to determine whether the public interest in protecting a child witness from unnecessarily revisiting a traumatic experience is a "compelling justification" for the presentation of a hearsay statement to a grand jury.[18] But this is not such a case. Instead, the State's argument before us depends on showing that the recorded statement at issue is excluded from the definition of hearsay under Evidence Rule 801(d)(3).

## B. The State Could Not Satisfy The Foundational Requirements Of Evidence Rule 801(d)(3) At The Grand Jury Proceeding.

The State's argument hinges on Evidence Rule 801(d)(3), which provides that "a recorded statement by the victim of a crime who is less than 16 years of age" is not hearsay if several foundational requirements are satisfied.[19] If the State had satisfied

---

[16] *See, e.g.*, *Galauska*, 527 P.2d at 465; *Preston v. State*, 615 P.2d 594, 599 (Alaska 1980).

[17] *See, e.g.*, *Gieffels*, 554 P.2d at 464; *Adams v. State*, 598 P.2d 503, 508 (Alaska 1979).

[18] *Cf. Galauska*, 527 P.2d at 465 (holding that constitutional interest in protecting co-defendant's right against self-incrimination constitutes "compelling justification" for presentation of hearsay to grand jury).

[19] *See* Alaska R. Evid. 801(d)(3).

this rule's requirements, it would have been proper for the State to provide the recorded statement to the grand jury.[20]

However, as the court recognizes, several of the requirements in Evidence Rule 801(d)(3) are "specific to admissibility at trial" and cannot be satisfied in a grand jury proceeding. These include a requirement that "the victim is available for cross-examination."[21] As the State has acknowledged, "there is no cross-examination at grand jury."

The State argues that we should interpret Evidence Rule 801(d)(3) so that some of its requirements apply only at trial, not at a grand jury proceeding. That interpretation lacks any support in the text of Rule 801(d)(3). To overcome the unambiguous text, the State thus bears a "correspondingly heavy burden of demonstrating contrary legislative intent."[22] The State has not carried that burden.

The State argues that the legislature "must have intended" that the hearsay exclusion in Rule 801(d)(3) would apply in grand jury proceedings, but as the court of appeals explained, "The legislative history of Evidence Rule 801(d)(3) contains no discussion at all about whether or how the rule could be applied in the grand jury context."[23] Furthermore, the sponsor of Rule 801(d)(3) explained that he intended several of its foundational requirements — including the requirement that the witness

---

[20] *See Galauska*, 527 P.2d at 464 & n.4.

[21] Alaska R. Evid. 801(d)(3)(B).

[22] *State v. Planned Parenthood of the Great Nw.*, 436 P.3d 984, 992 (Alaska 2019) (quoting *State v. Fyfe*, 370 P.3d 1092, 1095 (Alaska 2016)); *see also State, Dep't of Nat. Res. v. City of Haines*, 627 P.2d 1047, 1049 n.6 (Alaska 1981) ("Consideration of the legislative history may demonstrate that an ambiguity, although not apparent on the face of the statute, does exist with respect to the legislature's use of a particular term. However, if not, then we must adhere to the general rule that if the language of a statute is unambiguous and expresses the intention of the legislature, it should not be modified or extended by judicial construction.").

[23] *State v. Powell*, 487 P.3d 609, 614 (Alaska App. 2021).

be available for cross-examination, which cannot be satisfied in a grand jury proceeding — to help ensure the reliability of the recorded statements and protect defendants from false accusations.[24] That purpose is ill-served by waiving some of the Rule's foundational requirements in grand jury proceedings. And while there is evidence in the legislative history suggesting that some legislators and witnesses supported allowing the presentation of recorded statements to the grand jury,[25] the rule the legislature ultimately adopted did not contain a carve-out for grand jury proceedings.[26] This mixed history cannot carry the State's heavy burden to demonstrate that the legislature intended something other than what the plain text of Rule 801(d)(3) says.

The legislature knows how to modify the Criminal Rules to allow the State to present hearsay evidence of out-of-court statements by child victims to the grand jury. It did exactly that in 1985 when it enacted Criminal Rule 6(s)(2), one of the enumerated exceptions to the prohibition against the presentation of hearsay evidence

---

[24] *See* Comments of Sen. Hollis French at 9:34:10-9:35:13, Hearing on S.B. 117 Before the S. Jud. Comm., 24th Leg., 1st Sess. (Mar. 31, 2005).

[25] *See, e.g.*, Statement of Sen. French at 29:53-31:10, Floor Debate on Senate Committee Substitute for Committee Substitute for Sponsor Substitute for House Bill (S.C.S. C.S.S.S.H.B.) 53 (FIN), 24th Leg., 1st Sess. (May 9, 2005) (criticizing prior approach to interviews of child victims in which children faced "a gauntlet of interviews," including by, among others, district attorneys who "would want to hear the story before it was presented to grand jury," noting victims' stories were then often "repeated again to the grand jury" and yet again at trial); Testimony of Michelle Pettijohn, Social Worker, Off. of Child.'s Servs., at 8:41:59-8:42:36, Hearing on S.B. 117 Before the S. Jud. Comm., 24th Leg., 1st Sess. (Apr. 4, 2005) ("I believe the taped forensic interview done at a child advocacy center should be admissible in court, and I strongly believe children should only have to state their story one time.").

[26] *See* ch. 64, § 59, SLA 2005; *see also* Statement of Sen. French at 32:30-33:00, Floor Debate on S.C.S. C.S.S.S.H.B. 53 (FIN), 24th Leg., 1st Sess. (May 9, 2005) ("This amendment would . . . change the system, such that the interview done at the [child advocacy center] could be played *at trial*, as long as the child is there to be cross-examined." (emphasis added)).

to a grand jury,[27] and again in 1998 when it amended Rule 6(s)(2) to make it applicable to a wider range of cases.[28]  Rule 6(s)(2) includes foundational requirements that are specifically tailored to grand jury proceedings.[29]  The legislature's failure to add similar provisions to Evidence Rule 801(d)(3) supports the conclusion that the legislature did not contemplate grand jury proceedings when adopting Rule 801(d)(3).

In sum, the text of Rule 801(d)(3) clearly includes foundational requirements that cannot be satisfied at grand jury, and the State has not carried its "correspondingly heavy burden of demonstrating contrary legislative intent."[30]  I would affirm the court of appeals' holding that Rule 801(d)(3) does not apply to grand jury proceedings[31] and conclude that, as a result, the recorded statement at issue in this case was hearsay and should not have been presented to the grand jury without "compelling justification."[32]

---

[27]     *See* ch. 41, §§ 1-2, SLA 1985; Alaska R. Crim. P. 6(s)(2) ("In a prosecution for an offense under AS 11.41.410-11.41.458, hearsay evidence of a statement related to the offense, not otherwise admissible, made by a child who is the victim of the offense may be admitted into evidence before the grand jury if (i) the circumstances of the statement indicate its reliability; (ii) the child is under 10 years of age when the hearsay evidence is sought to be admitted; (iii) additional evidence is introduced to corroborate the statement; and (iv) the child testifies at the grand jury proceeding or the child will be available to testify at trial.").

[28]     *See* ch. 81, § 21, SLA 1998.

[29]     *See* Alaska R. Crim. P. 6(s)(2).

[30]     *State v. Planned Parenthood of the Great Nw.*, 436 P.3d 984, 992 (Alaska 2019) (quoting *State v. Fyfe*, 370 P.3d 1092, 1095 (Alaska 2016)).

[31]     *See State v. Powell*, 487 P.3d 609, 616 (Alaska App. 2021); Alaska R. Crim. P. 6(s)(1) ("Except as stated in [other parts of the Rule], hearsay evidence shall not be presented to the grand jury absent compelling justification for its introduction.").

[32]     *See* Alaska R. Crim. P. 6(s)(1).

**C.    The Recorded Statement Was Not Admissible Under Criminal Rule 6(s)(1).**

The court's opinion focuses not on the text of Evidence Rule 801(d)(3) but instead on Criminal Rule 6(s)(1), which allows the State to present to a grand jury any evidence that "would be legally admissible at trial."[33]  This language presents a practical dilemma:  The decision about whether to admit evidence is ordinarily made by a judge, but there is no judge present at a grand jury proceeding.[34]  Without a judge present, how is the State expected to determine what evidence "would be legally admissible at trial" when making its case to the grand jury?  The court concludes that Rule 6(s)(1)'s conditional phrase "would be" is forward-looking, meaning that it calls for predictions about what foundational facts the State might be able to establish and what a judge might decide at a hypothetical future trial.  I respectfully disagree.

I cannot accept the court's conclusion that Rule 6(s)(1) has a single plain meaning that is forward-looking.  The reference to "[e]vidence which would be legally admissible at trial" is ambiguous, leaving a significant role for consideration of the history and purpose of Rule 6(s)(1) under our "sliding scale" approach to the interpretation of court rules.[35]  The history and purpose of Rule 6(s)(1) and our related precedent all support the conclusion that the first clause of the Rule focuses on the reliability of evidence as measured *at the time of the grand jury proceeding* and therefore allows the State to present evidence that would be admissible under the hearsay rules applied *at that time*.  The recorded statement at issue in this case did not satisfy this standard and should not have been presented to the grand jury.

---

[33]    Alaska R. Crim. P. 6(s)(1).

[34]    *See* Alaska R. Crim P. 6(*l*).

[35]    *See Off. of Pub. Advoc. v. Superior Ct.*, 462 P.3d 1000, 1005 (Alaska 2020) ("We use a sliding scale:  'the plainer the statutory language is, the more convincing the evidence of contrary legislative purpose or intent must be.' " (quoting *Alaska Tr., LLC v. Bachmeier*, 332 P.3d 1, 7 (Alaska 2014))).

### 1. Criminal Rule 6(s)(1) is ambiguous and should be interpreted in light of its history and purpose.

As the court acknowledges, "would" has a variety of meanings when used as an auxiliary verb, as it is in Criminal Rule 6(s)(1). "Would" sometimes expresses an intention or prediction about the future, as in the sentence, "I *would* try to admit that evidence again later."[36] The court adopts this forward-looking sense of "would." But "would" can also express a contingency or imagined alternative in the present, as in a sentence like, "That evidence *would* be admissible in federal court."[37]

Notably, the Alaska Administrative Procedure Act uses the phrase "would be admissible" in this present conditional sense when describing the rules of evidence that apply to agency adjudicative proceedings, providing that hearsay evidence "is not sufficient by itself to support a finding unless it would be admissible over objection in a civil action."[38] In this statute, context makes clear that deciding what "would be admissible" requires considering what evidence would be admissible under the hearsay rules applied at the time of the agency proceeding — that is, what is admissible at the administrative hearing — rather than predicting what will happen in some future "civil

---

[36] *See, e.g.*, *Would*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (3d ed. 2002) ("2. . . . used in auxiliary function to express plan or intention . . . .").

[37] *See, e.g.*, *id.* ("6. . . . used in auxiliary function to express probability or presumption in past or present time"); *see also Would*, THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (5th ed. 2011) ("5. Used in the main clause of a conditional statement to express a possibility or likelihood . . . . 6. Used to express presumption or expectation . . . ."); *Would*, NEW OXFORD AMERICAN DICTIONARY (3d ed. 2010) ("2. (expressing the conditional mood) indicating the consequence of an imagined event or situation . . . . 5. expressing a conjecture, opinion, or hope . . . .").

[38] AS 44.62.460(d); *see, e.g.*, Alaska R. Civ. P. 27(a)(4); Alaska R. Evid. 609(e), 806; Alaska Bar R. 7(4); *cf. Strickland v. Washington*, 466 U.S. 668, 694 (1984) (holding that showing of prejudice in ineffective assistance of counsel claims requires "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding *would* have been different," using another, non-forward-looking sense of "would" (emphasis added)).

action."   Applying this same present conditional sense of "would" in interpreting Rule 6(s)(1) leads to the conclusion that evidence is presently admissible at the grand jury proceeding to the same extent it would be admissible if the grand jury proceeding was a hypothetical trial.

Nothing in the text of Criminal Rule 6(s)(1) makes plain that "would" is used in the forward-looking sense, rather than the present conditional sense.  In fact, the second sentence of Rule 6(s)(1) counsels against the forward-looking interpretation. The second sentence refers to admissible evidence that "*will* be available at trial," demonstrating that when we drafted Rule 6(s)(1), we understood how to refer unambiguously to an anticipated future condition in this context.[39]  It is reasonable to infer that the choice to use different words in the first and second sentences reflected an intent to convey different meanings.[40]

Because the phrase "would be legally admissible at trial" has at least two plausible meanings, the interpretation that is more consistent with the history and purpose of Criminal Rule 6(s)(1) should control.

### 2. The history and purpose of Criminal Rule 6(s)(1) favor an interpretation that is not forward-looking.

As I read the history of Criminal Rule (6)(s)(1), its primary purpose was to reduce the risk of indictments based on evidence that "lacks sufficient reliability" to form the basis for a criminal prosecution.[41]  Because that purpose is best served by focusing on the reliability of the evidence as measured at the time of the grand jury

---

[39]     Alaska R. Crim. P. 6(s)(1) (emphasis added).

[40]     *See Sw. Airlines Co. v. Saxon*, 142 S. Ct. 1783, 1789 (2022) ("[W]here [a] document has used one term in one place, and a materially different term in another, the presumption is that the different term denotes a different idea." (alterations in original) (quoting ANTONIN SCALIA & BRIAN GARNER, READING LAW:  THE INTERPRETATION OF LEGAL TEXTS 170 (2012))).

[41]     *See Taggard v. State*, 500 P.2d 238, 243 (Alaska 1972), *disapproved of on other grounds by McCracken v. Corey*, 612 P.2d 990, 992 n.6 (Alaska 1980).

proceeding, and not by a prediction about what foundational facts may be provable at a hypothetical future trial, I disagree with the court's conclusion that Rule 6(s)(1) is "forward-looking."

As the court recognizes, we steadily narrowed the circumstances under which hearsay evidence may be presented to the grand jury in a series of decisions leading up to the adoption of Rule 6(s).[42] In so doing, we adopted higher standards than those required by the federal constitution, which allows indictments to rest on hearsay alone, no matter how unreliable.[43] We explained that these higher standards are rooted in the right, under Alaska's Constitution, to an indictment by a grand jury,[44] which

---

[42] *See State v. Parks*, 437 P.2d 642, 644-45 (Alaska 1968) (holding indictment is subject to dismissal if "no evidence was presented to the grand jury that rationally established the facts," but that "hearsay evidence may rationally establish facts and therefore may be sufficient evidence to justify the findings of an indictment"); *Burkholder v. State*, 491 P.2d 754, 758 (Alaska 1971) (holding that hearsay without indicia of reliability cannot "rationally establish facts" sufficient to support indictment); *Taggard*, 500 P.2d at 242-43 (laying out "two-step analysis" for challenges to indictments based on hearsay in which courts must first determine whether "the evidence presented a sufficiently detailed account of criminal activity and the defendant's participation in this activity" that, if uncontradicted, would warrant conviction, and second, "determine whether the credibility of the informant has been sufficiently established so that the grand jury may know how much weight to give to the hearsay testimony"); *see also State v. Skan*, 511 P.2d 1296, 1297 (Alaska 1973) (affirming dismissal of indictment based on *Taggard* two-step analysis).

[43] *Compare Parks*, 437 P.2d at 644, *Burkholder*, 491 P.2d at 758, *and Taggard*, 500 P.2d at 242-43, *with Costello v. United States*, 350 U.S. 359, 363 (1956) (holding Fifth Amendment to United States Constitution does not prohibit indictments based on "inadequate or incompetent evidence"); *see also Wassillie v. State*, 411 P.3d 595, 608 & n.89 (Alaska 2018) (noting Alaska's standards are "atypically strict" compared with those applied by federal courts and courts of other states).

[44] Alaska Const. art. I, § 8.

guarantees a measure of "protection of the innocent against oppression and unjust prosecution."[45]

The clear trend of these decisions was toward limiting the presentation of hearsay to the grand jury. And as the court recognizes, our focus in each of these decisions "was not on whether the evidence would later be admissible at trial, but whether it was sufficiently reliable to support a reasoned decision about the likelihood of the accused being found guilty at a future criminal trial." This emphasis focuses on the reliability of the evidence as measured at the time of the grand jury proceeding, not a forward-looking prediction about what foundation the State may be able to lay at a future trial.

Against that backdrop, we adopted the rule that became Criminal Rule 6(s)(1) based in part on a section of a 1971 standard published by the American Bar Association (ABA).[46] The commentary to that section acknowledges that it lays out a more defendant-protective rule than some courts require.[47] Consistent with that

---

[45] *Parks*, 437 P.2d at 643 (quoting *State v. Shelton*, 368 P.2d 817, 819 (Alaska 1962)); *see also Burkholder*, 491 P.2d at 757 (noting "the protective value of the constitutional right to a grand jury indictment").

[46] *See* Alaska Supreme Court Order No. 157 (Jan. 22, 1973); *State v. Gieffels*, 554 P.2d 460, 463 (Alaska 1976) (noting source of rule); AM. BAR ASS'N PROJECT ON STANDARDS FOR CRIM. JUST., STANDARDS RELATING TO THE PROSECUTION FUNCTION AND THE DEFENSE FUNCTION § 3.6(a), at 88 (Approved Draft 1971) (hereinafter ABA STANDARDS) ("A prosecutor should present to the grand jury only evidence which he believes would be admissible at trial. However, in appropriate cases the prosecutor may present witnesses to summarize admissible evidence available to him which he believes he will be able to present at trial."); *see also Coger v. State*, 517 P.2d 1403, 1406 n.5 (Alaska 1974) (describing Section 3.6(a) of ABA Standards as having been "adopted" in *Taggard*, 500 P.2d at 242 n.14, and *Burkholder*, 491 P.2d at 758 n.14).

[47] *See* ABA STANDARDS, *supra* note 46, § 3.6 cmt., at 89 ("As a general principle, the use of secondary evidence before a grand jury should be avoided unless

approach, the commentary to the preceding section of the same ABA standard asserts that when presenting to a grand jury, "[the prosecutor] should be guided by the standards governing and defining the proper presentation of the state's case in an adversary trial before a petit jury."[48] The first sentence of the standard we relied upon in crafting our new rule then states, "A prosecutor should present to the grand jury only evidence which he believes would be admissible at trial."[49] Then, like the second sentence of Rule 6(s)(1), the ABA standard uses the word "will," rather than "would," when making conditional references to the future.[50] The different word choice in the later parts of the standard supports an inference that the word "would," when referring to evidence that "would be admissible at trial," has a different meaning that is not forward-looking.[51] While the standard contains essentially the same ambiguity as Rule 6(s)(1), it appears to have focused — much like our earlier decisions — on the reliability of evidence as measured at the time of the grand jury proceeding, not on a forecast of its potential future reliability at the time of trial.

---

there are cogent reasons justifying the presentation of a matter on the basis of such evidence. On the other hand, some jurisdictions allow an indictment to rest on evidence which would not be admissible at trial, *e.g.*, *Costello v. United States*, 350 U.S. 359 (1956)."); *see also Gieffels*, 554 P.2d at 463 (recognizing commentary to these standards as persuasive authority).

[48] ABA STANDARDS, *supra* note 46, § 3.5 cmt., at 88.

[49] *Id.* § 3.6(a), at 88.

[50] *See id.* ("[I]n appropriate cases the prosecutor may present witnesses to summarize admissible evidence available to him which he believes he *will* be able to present at trial." (emphasis added)); *id.* § 3.6(b) ("The prosecutor should disclose to the grand jury any evidence which he knows *will* tend to negate guilt." (emphasis added)); *id.* § 3.6(e) ("The prosecutor should not compel the appearance of a witness whose activities are the subject of the inquiry if the witness states in advance that if called he *will* exercise his constitutional privilege not to testify." (emphasis added)).

[51] *See Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 458-59 (2022).

This history suggests that Rule 6(s)(1) codified an evolution away from the unrestricted presentation of hearsay to the grand jury and toward more trial-like rules designed to ensure the reliability of evidence presented. I agree with the court that the evident purpose of Rule 6(s)(1) was not "to exclude all hearsay." That much is apparent from the fact that Rule 6(s)(1) has always allowed hearsay when the State can show a "compelling justification" for its use.[52] However, in my view, the history shows that Rule 6(s)(1) was clearly intended to limit the use of hearsay in favor of more reliable forms of evidence when no such justification is offered.

Based on the history and purpose of Criminal Rule 6(s), I would not interpret Rule 6(s)(1) to be forward-looking. Instead, I would read the first clause of Rule (6)(s)(1) to focus on the reliability of evidence as measured at the time of the grand jury proceeding, and therefore allow the State to present only evidence that would be admissible under the hearsay rules applied at that time.

### 3. Our precedent does not require a forward-looking reading of Criminal Rule 6(s)(1).

I disagree with the court's conclusion that our prior decisions have implicitly assumed or adopted a forward-looking interpretation of Criminal Rule 6(s)(1). Each of the decisions the court cites is consistent with an interpretation that focuses on the reliability of hearsay evidence at the time of the grand jury proceeding.[53]

The court warns that a reading of Rule 6(s)(1) that focuses on whether the State satisfied foundational requirements at the time of the grand jury proceeding would lead to "absurd results," including disallowing the presentation of scientific and

---

[52]    *See* Alaska Supreme Court Order No. 157 (Jan. 22, 1973).

[53]    *See State v. Coon*, 974 P.2d 386, 394-95 (Alaska 1999), *abrogated on other grounds by State v. Sharpe*, 435 P.3d 887, 899-900 (Alaska 2019); *Bingaman v. State*, 76 P.3d 398, 416 (Alaska App. 2003); *State v. Nollner*, 749 P.2d 905, 908 (Alaska App. 1988); *Wassillie v. State*, 411 P.3d 595, 601-04 (Alaska 2018).

character evidence to the grand jury. It suggests that, under our decision in *State v. Coon*,[54] scientific evidence is not "admissible" until a trial judge has evaluated its accuracy and reliability. Similarly, the court suggests that, under the court of appeals' decision in *Bingaman v. State*,[55] character evidence is not "admissible" until a trial judge has conducted a balancing inquiry under Evidence Rule 403 and explained its reasoning on the record. It concludes that focusing on the foundation laid for evidence at the time of the grand jury proceeding could exclude from the grand jury's consideration "all evidence requiring an adversarial hearing and judicial decision on its admissibility before it is introduced at trial."

I disagree with the court's analysis for several reasons. First, Rule 6(s) specifically prohibits the presentation of most hearsay at grand jury,[56] and neither *Coon* nor *Bingaman* dealt with hearsay evidence.[57] There is no comparable rule limiting the presentation of scientific or character evidence to the grand jury. The established practice of presenting scientific and character evidence to the grand jury therefore does not tell us whether the State should also be allowed to present hearsay evidence under similar circumstances.

Second, *Coon* and *Bingaman* describe the procedures that must be followed before evidence may be *admitted* at trial; they do not create new foundational requirements for *admissibility* that only a judge can satisfy.[58] Although *Bingaman*

---

[54]    974 P.2d 386.

[55]    76 P.3d 398.

[56]    *See* Alaska R. Crim. P. 6(s)(1) (providing that unless exception applies, "hearsay evidence shall not be presented to the grand jury absent compelling justification for its introduction").

[57]    *See Coon*, 974 P.2d at 394-95; *Bingaman*, 76 P.3d at 416.

[58]    *See Coon*, 974 P.2d at 394-95; *Bingaman*, 76 P.3d at 416.

requires trial judges to explain their reasoning on the record,[59] I would interpret this requirement as a judge-made procedural device designed to facilitate appellate review, not a standalone foundational requirement that prevents evidence from being "admissible" until the court has articulated its reasoning.

Third, a forward-looking reading of Rule 6(s)(1) is not necessary to avoid the "absurd results" the court warns against. As the court of appeals correctly held in *State v. Nollner*, and as the court today agrees, the State may present evidence to a grand jury when it reasonably believes "in good faith" that a judge would resolve any legal questions about admissibility in its favor and admit the evidence at issue.[60] A prosecutor therefore has a duty to lay the proper foundation regarding the reliability and relevance of a scientific theory or technique before presenting scientific evidence to the grand jury. Similarly, a prosecutor must consider the prejudicial effect of any character evidence and refrain from presenting any evidence that would be substantially more prejudicial than probative. These inquiries do not need to be focused on how a judge will rule at a future trial. Instead, I would hold that they turn on an assessment of what a hypothetical trial judge would decide if that judge was applying the hearsay rules at the time of the grand jury proceeding.

Interpreting our precedent in this way would not impede the State's ability to present scientific and character evidence at grand jury. It would also be consistent with litigants' ability to present expert testimony and character evidence in administrative adjudications and other proceedings where the rules refer to evidence that "would be admissible" at a trial, but that do not include an actual trial as a routine stage of the proceedings.[61] If the court were correct that these kinds of evidence are not "admissible" until a judge has completed the required preliminary inquiries under *Coon*

---

[59]     *Bingaman*, 76 P.3d at 416.

[60]     *See State v. Nollner*, 749 P.2d 905, 908 (Alaska App. 1988).

[61]     *See, e.g.*, AS 44.62.460(d); Alaska Bar R. 7(4).

and *Bingaman*, then there would be no way to present such evidence under procedural rules that clearly refer to admissibility at a hypothetical trial, not a future one.[62] Adopting the *Nollner* approach and treating evidence as "admissible" when a party has a reasonable, good-faith belief that a judge would admit the evidence at the time it is offered at grand jury would avoid that problem.[63]

Finally, I disagree with the court's suggestion that our decision in *Wassillie v. State* implicitly adopted a forward-looking interpretation of Rule 6(s)(1).[64] As the court recognizes, the hearsay evidence at issue in *Wassillie* "could never meet the business records exception to hearsay at trial."[65] That meant that it would not be admissible at a hypothetical future trial, but it necessarily also meant that it would not have been admissible under the hearsay rules applied at the time of the grand jury proceeding.[66] Our analysis in *Wassillie* also focused on whether the evidence *was* admissible as a business record, not whether it *would be* admissible at a future trial, without grappling with the ambiguity in Rule 6(s)(1) that is at issue in this case.[67] I therefore do not think *Wassillie* provides persuasive authority for a forward-looking interpretation of the Rule.

In sum, I conclude that our rules at the time of the grand jury proceeding at issue in this case did not allow the presentation of recorded statements to the grand jury under Evidence Rule 801(d)(3).

---

[62] *Cf.* AS 44.62.460(d); Alaska Bar R. 7(4).

[63] *See Nollner*, 749 P.2d at 908.

[64] *See Wassillie v. State*, 411 P.3d 595, 604 (Alaska 2018).

[65] *See id.*

[66] *See id.*

[67] *See id*. at 601-04.

## VIII.  CONCLUSION

Because I agree with the court of appeals' interpretation of the rules that apply in this case, I respectfully dissent.